CROSS *et al. v.* O'CAVANAGH *et al.*

(In Banc. March 26, 1945. Suggestion of Error Overruled May 14, 1945.)

[21 So. (2d) 473. No. 35800.]

George R. Smith, of Gulfport, and Engle & Laub, of Natchez, for appellant.

Brandon, Brandon & Hornsby, of Natchez, for appellee.

144

Argued orally by **C. F. Engle**, for appellant, and by **Gerard Brandon**, for appellee.

**Roberds, J.**, delivered the opinion of the court.

This proceeding seeks a construction of the holographic will of Catharine B. Fagan, deceased, which reads:

"Natchez Aug 30 1933

"I Catharine B. Fagan a resident of Natchez Miss—Here by make my last Will and testament—

"I give and bequeath to—

My three Sisters Bessie—Margie and Stella—and the heirs of Eva Cross, all my real estate and personal property I die possessed of—To my Sister Minna Craig $1.00 (one dollar) and my Brother James O'Cavanagh $1.00 (one dollar). If at the death of my Sisters—Bessie Margie and Stella, what is left of my estate it will go to the heirs of my Sister Eva Cross—This Will has been entirely written, dated and signed by me

"Catharine B. Fagan

"I name

"Geo. T. Snyder executor without bond—

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . .. . . . . . . . . . . . . . . .

"I want Elizabeth Snyder to have my large diamond ring,—To Joean Cross the stone in my bank box to be set in a ring Patrichia Ann Gros, my small diamond ring—

"Catharine B. Fagan."

Eva Cross was dead when the will was written, and then, and also at the date of the death of the testatrix, February 9, 1938, had three heirs, her children, namely, Mrs. Edna Gros, Mrs. Anita Snyder, and Joseph B. Cross.

The specific questions presented are:

First: Do the sisters, Bessie, Margie, and Stella, each get one-fourth of the estate (less the specific bequests given to others), or do the three together, as a class, get one-half thereof, and, therefore, each one-sixth? And do the three heirs of Eva Cross together, as a class, get one-fourth, and, therefore, each one-twelfth, or do they each get one-sixth of the estate?

Second: Is the remainder provision to the heirs of Eva Cross after the death of the sisters valid?

Third: If so, when are the Eva Cross heirs entitled to the use and possession of the property under such provision—at the death of each sister or upon the death of the last survivor?

We will consider the first question. In doing so it will be helpful to set out some well-established applicable rules of construction.

The paramount duty of the court is to ascertain the intent of the testator, gathered from the language used, in the light of the circumstances surrounding the execution of the will, and give effect to such intent unless contrary to law or public policy.

Doubtful provisions will be construed favorably to the next of kin, as against those of more remote kinship, of the testatrix. Ball v. Phelan, 94 Miss. 293, 49 So. 956, 23 L. R. A. (N. S.), 895.

A construction of ambiguous provisions which results in a just and reasonable disposition of the property will be adopted in the absence of clear intent to the contrary. Patterson v. Patterson, 150 Miss. 179, 116 So. 734; Dealy et al. v. Keatts et al., 157 Miss. 412, 128 So. 268.

A devise or bequest to a number of persons not named individually but all within the class described by the testator, the numbers of which may increase or decrease, is, generally, a gift to a class and not to separate individuals. Branton v. Buckley et al., 99 Miss. 116, 54 So. 850, L. R. A. 1917C, 527; Marx et al. v. Hale et al., 131 Miss. 290, 95 So. 441; Balfour v. Wells et al., 183 Miss. 707, 183 So. 392, 184 So. 313. Conversely, a testamentary gift to named individuals, even though such individuals possess some characteristic in common, is not ordinarily a gift to a class. Byrd v. Wallis et al., 182 Miss. 499, 181 So. 727.

"As a general rule where a devise or bequest is made to 'heirs', . . . . the law presumes the intention of the testator to be that the beneficiaries so designated take per stirpes and not per capita, . . .," although such presumption is easily overcome by words indicating that they should take per capita. 69 C. J., p. 290, Sec. 1316.

We will apply these rules to the situation at hand. Unfortunately, no proof was taken on the trial showing the pertinent circumstances surrounding the testatrix, her estate, and the beneficiaries. The matter was heard

on bill by appellees and three special demurrers, so designated, of appellants, which were overruled by the chancellor, from which ruling appellants appeal. However, from the pleadings and briefs we gather the facts to be that, when Mrs. Fagan wrote this will in 1933, she was then an elderly widow lady with no children; that she had four sisters and one brother then living, and a sister, Eva Cross, then dead, whose heirs were her children named above. Mrs. Snyder's husband was named executor. It also appears that the three named sisters were elderly persons and that two, Bessie and Stella, had never married, and that Margie was a widow without children. The other living sister was Minna Craig, to whom Mrs. Fagan, for her own reasons, gave one dollar. She also gave her brother James one dollar.

Mrs. Fagan's sisters were, of course, more closely related to her by blood than the children of Eva Cross, her nieces and nephew. It was but natural, under the foregoing circumstances, that she would prefer these sisters to such heirs. Again, it would seem natural that she would desire the heirs of Eva Cross to take together the portion of her estate she would likely have given Eva had she been living when the will was written. She used the expression "My three sisters Bessie, Margie and Stella," not for the purpose of designating them as a class, but to distinguish them from her other sister, Minna Craig. While she designated them as "my three sisters," she also named them individually. On the other hand, she described a typical class gift in dealing with the "heirs" of her deceased sister. They were in existence and known to her, but she did not name them individually. The numbers of this class, from the writing of the will to the death of the testatrix, might have increased or decreased. In fact, the number of claimants has increased since the death of the testatrix, the present appellees being the widow and the four children of Joseph B. Cross, who died intestate in July, 1941. It is said in 69 C. J., p. 289, Sec. 1314, ". . . Where the gift is to an individual or sev-

eral named individuals and to others as a class . . . the latter take per stirpes; unless the testator uses language indicating an intention that the members of the class shall share equally with the named individuals.'' Under that pronouncement the heirs of Eva Cross take per stirpes. It was the paramount intent of Mrs. Fagan to properly care for the ''three'' sisters, and that being true, she would not have given to each of them only the share she gave to each of the heirs of Eva Cross. It was her intention to, and she did, by these provisions in her will, give to each of her sisters, Miss Bessie O'Cavanagh, Miss Stella O'Cavanagh, and Mrs. Margie Musgrove, one-fourth of her estate, not including the specific bequests, and to the heirs of Eva Cross together, as a class the other one-fourth, as modified by the construction hereinafter given the remainder provision in the will.

This construction of the provisions under consideration is strengthened by the fact that these three sisters and Mrs. Gros, Mrs. Snyder, and Joseph B. Cross, the then heirs of Eva Cross, deceased, were parties to a court proceeding in Louisiana, involving some lands of testatrix located in that state, and they agreed to the foregoing interpretation of the will under the two provisions we have discussed, and to the division of the property in that proportion, and that they also did that as to the personal property in the administration of the estate by the chancery court of Adams County, Mississippi, accepting from the executor a distribution of such personal property on that basis, and receipting him therefor. Appellees, as above stated, inherit their rights through Joseph B. Cross, who has died since those court proceedings were had. It is worthy of note also that Mrs. Gros and Mrs. Snyder joined in the bill in this proceeding, asking the court to give these provisions the construction we have placed upon them. While the practical construction given doubtful provisions of a will by interested parties is not conclusive and binding upon a court, in the absence of waiver or estoppel, ''. . . there is a strong

tendency of the courts, apart from evidential considerations, to give effect to such construction, at least as against the parties joining therein . . ." Anno. 67 A. L. R. 1277.

Considering now the second question, it will be noted that the will contains this provision, "If at the death of my sisters—Bessie, Margie and Stella, what is left of my estate it will go to the heirs of my Sister Eva Cross." Appellees say this provision is void; that by the previous provision testatrix had vested in each of the three sisters the absolute fee-simple title to one-fourth of her estate and that the provision in question, if effective, will reduce this to a life estate, which cannot be done by a provision as vague, indefinite, and uncertain as this. Harvey v. Johnson, 111 Miss. 566, 71 So. 824. In interpreting the intention of the testatrix, we must consider the entire instrument and construe each part with relation to the language used in other parts. Further, all provisions should be held to be valid if that can be reasonably done. Bratton et al. v. Graham et al., 146 Miss. 246, 111 So. 353. And all provisions must be considered, and, if possible, given effect. Joiner v. Joiner, 117 Miss. 507, 78 So. 369. Mrs. Fagan wrote this will herself, and it is apparent she was not skilled in such matters, but we think her meaning is clear and that there is no conflict in these provisions when considered together. We have said that her first and paramount wish was to amply care for her three named sisters. Her next consideration, after the first had been accomplished, was to give her property to the heirs of her deceased sister, Eva Cross. She gave each of the three sisters one-fourth of her property with full right and power to use, consume, dispose of, and sell and convey title thereto if they desired to do so in their lifetime, but "what is left of my estate will go to the heirs of my Sister Eva Cross." In other words, she took away from the sisters the right of disposition by will, and from the law the power of direction, of any of her estate remaining upon the death of such sisters. The three sisters are

vested with absolute title to the estate so given them, subject only to the above limitations. The cases of Selig v. Trost et al., 110 Miss. 584, 70 So. 699, and Spiva et al. v. Coleman et al., 122 Miss. 142, 84 So. 144, are analogous to this case, and support this conclusion.

The third question is when will the possession and enjoyment of "what is left" of the property given the three sisters vest in the heirs of Eva Cross—upon the death of each sister or the last survivor of them? The question has given us much concern, but we have concluded that the time of such vesting will be upon the death of each as to that sister's share, for these, among other, reasons: After each sister is cared for the dominant intent of the testatrix will have been fulfilled. The remainder of the property to that sister should then be devoted to the next paramount intent of the testatrix—that of caring for the heirs of Eva Cross. And the second reason is that our law does not favor joint estates with right of survivorship. Section 834, Code 1942, reads: "All conveyances or devises of land made to two or more persons, or to a husband and wife, shall be construed to create estates in common, and not in joint-tenancy or entirety, unless it manifestly appears from the tenor of the instrument, that it was intended to create an estate in joint-tenancy or entirety with the right of survivorship . . ."

One other question remains. Certain persons named Jenkins and others by name of Stanton made separate deeds of lands to the three sisters and to Mrs. Gros, Mrs. Snyder, and Joseph B. Cross in satisfaction of debts owing by the grantors in the deeds to the estate of Mrs. Fagan, to secure which debts the estate held trust deeds on the lands so conveyed. The Jenkins deed, by its express terms, purported to vest in the grantees an interest in the property in proportion to their respective interests under the will, but the Stanton deed conveyed to them by names without defining their respective interests as such grantees. The question is what are the respective interests of the grantees in such lands? The debts satis-

fied by such conveyances were debts owing to the estate and the deeds in satisfaction of said debts were made under authority of the chancery court in which the estate was being administered. It follows that the grantees in these deeds hold title to the lands in the respective rights and proportionate interests under said will as above adjudicated and defined.

Affirmed and remanded.

## CONCURRING OPINION.

**Smith, C. J.,** delivered a concurring opinion.

I do not know what the meaning is of that clause of this will which provides a limitation over on the death of the testatrix' three sisters, Bessie, Margie, and Stella, of their interest in the property devised to them and the heirs of Eva Cross. An opinion by me would be a mere guess that most probably would be less correct—I speak with deference—than the one here made by my associates. This should be qualified to this extent, if the words "at the death of my Sisters—Bessie, Margie and Stella" mean their death after that of the testatrix, then the limitation over to the heirs of Eva Cross takes place at, but not until, the death of all three of them. Henry v. Henderson, 103 Miss. 48, 60 So. 33.

**L. A. Smith, Sr., J.,** concurs in this opinion.