YEATES *v.* BOX *et al.*

(In Banc.  May 28, 1945.  Suggestion of Error Overruled Sept. 24, 1945.)

[22 So. (2d) 411.  No. 35872.]

Ray, Spivey & Cain, of Canton, and Jones & Ray, of Jackson, for appellant.

Bridgeforth & Love, of Yazoo City, A. S. Bozeman, of Meridian, and Auvergne Williams, of Memphis, Tenn., for appellees.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

This appeal comes to us from the Chancery Court of Humphreys County where the appellant here was complainant, and sought in the chancery court partition in kind of certain lands in Humphreys County; the construction of the will of Charles B. Box, deceased; that the executors, who also qualified as trustees, be required to file their final account in both capacities and be removed as trustees; and as executors; that the court fix the amount of the support, maintenance and burial of L. W. Wofford, prorate and fix the same as a lien against the interests of the parties; and that the annuity in favor of Mrs. Mattie H. Box, the widow, also be prorated and secured by lien against the interest of the respective parties.

To the original bill appellees filed a general demurrer that there is no equity on the face of the bill. Two special demurrers also were filed by appellees, assigning the grounds that a partition of the land would be contrary to the directions of the will, and defeat the intention of the testator, as expressed therein; that the will creates an active trust of such lands with Auvergne Williams and Henry Alcus, as trustees, imposing upon them as such trustees active duties which they could not perform if such lands were partitioned; that the will directs them to make any division to be made of said land into the

directed portions; that the will confides in them the determination for the ending of the trust, according to their sole discretion, as they think best; that the will directs them as trustees to support the widow, Mrs. Mattie H. Box, to the amount of $3,000 per year, which would be defeated by the partition of the land under the original bill; that the payment of the testator's debts was not fixed as a criterion by which termination of the trust would be judged; and that in a partition suit complainant could not require them to cease to function by separate original bill therein but only by proceedings in the probate case where the trust is being administered.

The will is as follows:

"I wan't all my just debts paid. I think best that my Estate be continued as this is not a proper time for disposing of anything. I think best that Auvergne Williams and Hy Alcus have charge of the estate.

"I desire that my wife Mattie H. Box be cared for to the amount of Three Thousand Dollars per year that she have the use of home during her lifetime. She is also to have $5000.00 insurance O. R. C. Policy #1, Series E.

"I also want and desire that my old Uncle, L. W. Wofford be cared for until death & buried.

"Then at proper time as above named Auvergne Williams and Henry Alcus think best as estate is liquidated that my wife Mattie H. Box have One Third of Estate and my direct relatives have one third and balance of third be divided to Mary Whitworth Yeates and Mattie Thornton.

"Signed

"Charles Bowen Box"

After the filing of the original bill, L. W. Wofford died, and the appellant amended the original bill by deleting therefrom all reference, both in the averments and prayer thereof, to Mr. Wofford.

The chancery court sustained the demurrers, and the complainants not pleading further, the original bill, as

amended, was dismissed. From that final decree, the complainants below appeal here.

It is the contention of the appellants that the will did not create a trust but devised the property in fee simple to the parties named, withholding only the right of immediate possession, which they contend was due to the condition of the times and to the necessity of keeping the property together until the debts of the decedent were paid. In other words, they argue that they are tenants in common of the land "with an estate in possession and the right of the possession, and not in reversion and remainder." Appellants say that the demurrer admits this claim. The position of the appellees is that they do not admit by the demurrer this claim, which is a legal conclusion. Furthermore, appellees take the position that the original bill shows on its fact complainant was not at the time entitled to maintain a bill for partition or distribution which would defeat the will of the testator, which was exhibited with the original bill, and controlled certain averments therein.

The will was dated, as will appear from the examination thereof, December 20, 1930, and was probated in June 1931, both alleged to have been during the "depression." At the time of the death of the testator, the will became the authority for the administration of the estate by Auvergne Williams and Henry Alcus so as to pay the sum of $3,000 per year to the widow "during her lifetime," and so that "My old Uncle L. W. Wofford will be cared for until death and buried." The opening paragraph of the will provides for the payment of the testator's just debts and that his estate be continued "as this is not a proper time for disposing of anything. I think best that Auvergne Williams and Hy Alcus have charge of the estate." By the last provision of the will, it is provided that "at proper time as above named Auvergne Williams and Henry Alcus think best as estate is liquidated that my wife Mattie H. Box have one-third of estate and my direct

relatives have one-third, and balance of third be divided to Mary Whitworth Yeates and Mattie Thornton."

The basis of all constructions of wills is to seek the intention of the testator, and that this be ascertained from its language gathered from the whole will. It is necessary to consider the entire purpose of the testator from the language of the will, taking into consideration and giving due weight to every word therein. Then, "Once the actual intent of the testator at the time of the making of the will has been in this way ascertained, all minor, subordinate, and technical rules of construction must yield to this paramount intent thus ascertained." Ball v. Phelan et al., 94 Miss. 293, 49 So. 956, 958, 23 L. R. A. (N. S.) 895.

The first question to determine is whether or not this will creates a trust with Auvergne Williams and Henry Alcus as trustees. They were not called either executors or trustees in the will, but the testator wrote that he thought it best for them to have charge of the estate, which is sufficient to name them as executors. Does this provision in the will, considering the whole will, constitute them also trustees? Generally speaking, the duties of an executor are limited to the winding up of an estate of a decedent and are temporary. In the absence of a statute otherwise providing the duties of an executor are (1) to reduce to possession the personal assets of the testator; (2) to pay the testator's debts; (3) to pay legacies; and (4) to distribute the surplus to the parties entitled thereto. American Law Institute, 1 Restatement, Trusts, Chapter 1, sec. 6, p. 23. According to the authority of the same textbook, if the testator names the same person as executor and as trustee, he is acting as executor in performing the four duties named above, but in performing additional duties, he is acting as trustee. It is said he may act as trustee with reference to a part of the property, although he is still acting as executor with reference to the rest of the property. Id., Chapter 2, Topic 3, sec. 23a, p. 72. However, in discussing the same matter, this

Court said in McNeese v. Conwill et al., 177 Miss. 427, 170 So. 678, 679, ''It is true that when express words are absent, courts must exercise due caution that words asserted to be the eqivalent thereof shall not be pressed too far; nevertheless, the holdings have been generally to the effect that such a testamentary trust will arise when the intention is reasonably manifest or well inferable from the entire language, viewed in the light of all the surrounding circumstances.''

By the provisions of the will directing the fiduciaries to pay an annuity to the widow during her life and to care for until death and burial of the uncle, in our judgment, the will created an active trusteeship, so that Auvergne Williams and Henry Alcus properly qualified as both executors and trustees.

Under this trusteeship, title and possession are in the trustees until the trusteeship be terminated, and until that be done, according to the language of the last paragraph, no title to the land or right to possession vests in the complainant herein and the other parties therein named. In the case of Lawrence et al. v. Lawrence et al., 181 Ill. 248, 54 N. E. 918, 919, the Court said: ''The trustee acquires whatever estate (even to a fee simple) is needed to enable him to accomplish the purposes of the trust.'' The Supreme Court of Tennessee said that to determine the extent of the title vested in the trustee, the intent, object and the purpose of the testator must be considered, and in trust created by will much more effect will be given to the intent of the testator than where the trust is created by deed. And the Tennessee Court said further in speaking of deeds: ''An importance will always be attached to technical terms which they will not be allowed to have in a will. On the other hand, the intent of a testator rules the construction of a will, and is stronger than the technical terms employed.'' Jourolmon v. Massengill, 86 Tenn. 81, 5 S. W. 719, 722. The trustees under this will took such title as was and is necessary for the purposes of the trust, although there were no techni-

cal words of expressed investiture. Toronto General Trust Company v. Chicago, B. & Q. R. Co. et al., 123 N. Y. 37, 25 N. E. 198, 199. The trust is still in force as to the payment of the $3,000 per annum to the widow.

With reference to the general demurrer to the original bill which the court sustained on the ground that there is no equity therein, we think the court was in error in sustaining the general demurrer because there is equity on the face of the bill in that appellant had the right to pray, and did pray, the court to terminate the trusteeship, if and when the court, on sufficient presentation thereof, should decide that the trust ought to be terminated. The general rule is that a trust will not survive the purpose of its creation, and that a testamentary trust will terminate or may be terminated on petition to the proper court when its purpose is fulfilled, or there is no reason for its longer existence. 69 C. J. 800. "A court of chancery or its equivalent has inherent power to remove a trustee for good cause, such power being incidental to the court's paramount duty to see that trusts are properly executed, and the trust estate preserved, and as broad and comprehensive as the exigencies of the case may require. It has been held that a court is not deprived of its power to remove a trustee for cause by the fact that it lacks power to appoint a substitute, nor that removal of the trustee will automatically terminate the trust, nor by provisions of the trust instrument attempting to oust the courts of jurisdiction." 65 C. J., sec. 445, p. 615. The chancery court has general superintendence of all fiduciary relations, and the removal of a trustee appointed by it is within its power. Nutt et al. v. State of Mississippi et al., 96 Miss. 473, 51 So. 401. The language of the will, which, it is argued, vests the sole right in the trustees to determine when the trust is to be closed does not, in our judgment, put an arbitrary power in their hands, but at most only the authority for the exercise of a sound discretion, and "While the court will not substitute its judgment for that of the trustee, it will, when-

ever the circumstances require, review the exercise of such a discretion given to a trustee, and decide whether it is reasonable or unreasonable, as it does in the case of the exercise of discretion by an inferior tribunal.'' Viall v. Rhode Island Hospital Trust Company, 45 R. I. 432, 123 A. 570, 572, 32 A. L. R. 437; 1 Rest., Trusts, sec. 187, and 2 Id., sec. 334, comment (d). Since the bill does seek this equitable relief, and without expressing any opinion on the merits of the cause one way or another, it does, in our judgment, have equity on its face and should be retained for adjudication of that issue. Milam v. Paxton, 160 Miss. 562, 563, 134 So. 171.

Having decided that there is equity on the face of the bill, we therefore consider the special demurrers which also were sustained by the chancery court. Section 2920, Code of 1930, Section 961, Code of 1942, defines qualifications of persons who may petition for a partition of lands in this state as ''joint-tenants, tenants in common, or coparceners, having an estate in possession or a right of possession and not in reversion or remainder.'' A careful construction of this will, in view of the fact that the trustees have not been removed, leads inevitably to the conclusion that the appellant at the time of filing her bill was not qualified under such classifications to bring or maintain a suit in partition. Title to the lands not having been invested in the parties by the termination of the trust, and the trustees being still in possession thereof, complainant was neither a tenant in common nor in possession, nor had the right to possession. Wirtz et al. v. Gordon et al., 187 Miss. 866, 184 So. 798, 192 So. 29. The bill is also multifarious insofar as the trustees are concerned, because the trustees are not interested in the partition. Nugent & McWillie v. Powell et al., 63 Miss. 99.

At the initiation of this trusteeship, it was the intention of the testator to keep his property intact, and in any event for some time in the future, and since the trust was instituted by virtue of this authority from the testa-

tor, as represented in his will, and by the decree in the probate proceedings, and has not yet been terminated, the prayer of appellant for partition cannot be granted. Whether or not the trustees should be removed, we do not decide, nor is our opinion here to be taken as prejudicing the right of appellant properly to press for their removal, or to prejudice them in defense of continuing the trust. Those are matters which will be considered by the chancery court on remand thereto. Brandenberg v. Thorndike et al., 139 Mass. 102, 28 N. E. 575. Therefore, in our judgment the chancery court was correct in sustaining the special demurrers for the reasons stated, supra. The action of the chancery court in sustaining the general demurrers is overruled, and is affirmed as to the sustaining of the special demurrers, and the cause remanded.

Reversed in part, affirmed in party, and remanded.