McKay, et al. *v.* Lemly, et al.

In Banc. April 25, 1949.

(40 So. (2d) 281)

460

**W. E. Gore**, for appellants.

462

464

Wells, Wells, Newman & Thomas, for appellees.

Roberds, J.

The problem presented by this appeal is the construction of the last will and testament of James U. McKay.

He departed this life in Hinds County, Mississippi, August 8, 1946. His holographic will, dated March 11, 1946, was admitted to probate in common form in said county September 6, 1946.

Certain of the designated beneficiaries in the will, by fifty six written instruments, one dated June 21, 1947, and the others dated June 23, 1947, endeavored, as between themselves, to vest in each other title to the respective properties given them in Item Two, and the provisions following that Item, of will. The bill herein prays (1) for a construction of the will and (2) for confirmation of title in accordance with said written agreements. Some of testator's heirs at law joined in these agreements but have renounced them.

The complainants in the bill include all of the stated beneficiaries in the will except Mrs. Lewis and Mrs. Winkleman and the two minors, Peyton and Hollister McKay. The next of kin and heirs at law of James U. McKay are Mrs. Louise McKay Lewis and Mrs. Helen McKay Winkleman, nieces; James Peyton McKay, George Hollister McKay, Griffith Head McKay, Hayden E. McKay and Eugene Reber McKay, nephews, and Mrs. E. A. Fleming, a sister. The last three named heirs joined as complainants in the bill. The defendants thereto consist of the other named heirs, the two minor beneficiaries, and the two executors. The heirs, the two minors and the executors are represented by different counsel.

It is the contention of the complainants (1) that Miss Elizabeth Cary Lemly took title in fee simple to all of the property described in the will, but, if mistaken in that, then (2) that the specified beneficiaries in Item Two and the part of the will following that Item were vested with absolute title to the properties designated to them, with right of full enjoyment thereof upon the death of Miss Lemly, although she did not die until October 17, 1947, some fourteen months after date of the death of the testator. They say, that although Item Two begins

with the words "But if at my death Miss Elizabeth Cary Lemly shall be dead", nevertheless ¡the beneficiaries thereafter named were vested with title to the respective properties specified to them although the testator predeceased Miss Lemly. In other words, they contend that the death of Miss Lemly prior to that of the testator was not a condition precedent to their right to take title but that her death after that of the testator merely determined the time when their enjoyment of the property would begin. Defendants, who are appellants here, take the position that under Item One Miss Lemly was vested only with a life estate in trust and that Item Two conferred no title whatever upon any of the stated beneficiaries, because Miss Lemly outlived the testator, and that all of the property of the testator descended to the heirs at law of the testator, subject to the requirement to meet the needs and comfort of Miss Lemly during her lifetime after the death of the testator.

The learned Chancellor decreed that Item One conferred upon Miss Lemly a limited life estate in trust, to be used for her needs and comfort, and that Item Two vested in the named beneficiaries the designatd property to each, and that the death of Miss Lemly determined the time of enjoyment but not the right to title. These are the questions with which we deal.

The members of the court are in agreement the Chancellor was correct in his holding as to Item One. We deem it unnecessary to discuss in detail the considerations which have brought us to that conclusion.

However, we are equally divided as to the correctness of the holding under Item Two. This opinion is an effort to set forth the views of the three members of the court who agree with the holding of the Chancellor as to that Item.

The problem must be solved by first determining the true intent of the testator and then applying thereto the doctrine of gifts by necessary implication.

The true intent must, of course, be gathered from the entire will, considered, as is said in the cases, "by its four corners", giving effect, if possible, to every provision thereof, construed in the light of the circumstances surrounding the testator at the time he executed it.

What were the circumstances surrounding the testator when he wrote this will? He and Miss Jennie Lemly, sister of Miss Elizabeth Cary Lemly, were married November 18th, 1903, at which time he was thirty and she twenty-nine years of age. This was the one and only marriage for each of them. They lived together as man and wife until the death of Mrs. McKay, intestate, April 1, 1938. She was then sixty-three and he sixty-four years of age. No issue was ever born to either of them. He was the only heir at law of his wife. She owned at the time of her death the fee to the property mentioned in the will as located at 412 High Street, and she also owned a one-half undivided interest with her sister Miss Elizabeth Cary Lemly in the property located at 520 North State Street, both being in Jackson, Mississippi. Mr. McKay inherited these two properties from his wife. He owned, but not acquired from his wife, the other three pieces of real estate described in the will.

After the death of his wife he and Miss Elizabeth Cary Lemly resided in the home of Miss Lemly in Jackson. At the time he executed his will Miss Lemly was in wretched health, suffering from cancer, from which she grew progressively worse until her death October 17th, 1947. Miss Lemly's estate aggregated approximately sixty thousand dollars. From the date of the death of James U. McKay to the date of the passing of Miss Lemly the executors in the will under consideration paid to her three thousand dollars for her needs and comfort.

Now, from these circumstances and the provisions of the will, what did Mr. McKay want done with his property? What were his intentions?

Aside from payment of his debts, it is clear, we think, from a reading of the will that his first and dominant intent was to care for his wife's sister during her lifetime. He not only made express provision therefor but he directed that the income from his estate be kept separate for that purpose and that the physical property be kept in repair. There will be no division of thought upon that question, we are sure and we, therefore do not enlarge upon the discussion.

But we think it is equally clear that it was the testator's desire and intention, after his primary purpose of caring for his wife's sister had been accomplished, to make a final disposition of his property and to give it to those whom he designated as beneficiaries therein. He carefully named each beneficiary and selected the property each was to receive. He outlined his plan and gave reasons for making no provision for some of his blood heirs. Was this to be done only on condition Miss Lemly predeceased him? In view of his inapt expression, "But if at my death Miss Elizabeth Cary Lemly shall be dead" ██ ██ we must, if we carry out his intentions, do so by application of the doctrine of gifts by necessary implication.

That doctrine is thoroughly grounded in the law of wills. It is that a court may, and in proper cases should, give effect to the true intent and purpose of a testator, indicated by necessary implication, although he has not set forth that intent and purpose in express language. Chief Justice Whitfield, in Ball v. Phelan, 94 Miss. 293, 49 So. 956, 958, 23 L. R. A., N. S., 895, said the best statement of the doctrine he had then found was this: "The rule of construction which seems to have prevailed is that the inference need not be irresistible or such as to exclude any doubts possible to be raised, but must, nevertheless, be such as to leave no hesitation in the mind of the court, and must rest not upon mere conjecture. The intention must be clear so that no other reasonable

inference can be made''. The rule is not hard to state. The difficulty is in its application.

We now analyze the provisions of this will, the evident intent of the testator and the result of sustaining, or not sustaining it, as bearing upon whether the quoted phrase precludes the devisees and legatees from taking under the will.

In the first place, no logical connection, or causal result, is perceived why Mr. McKay's desire to give his property as set out in the will should depend upon whether he himself or his wife's sister lived the longer. Of course he retained his property for his own benefit during his life. He assured himself of the care of Miss Lemly. After that why would the order of his and her passing affect his wishes as to disposition of the property? The thread which runs through his over-all plan was to care for Miss Lemly and then give his property as stated in the will. No reason is perceived why the mere fact Miss Lemly outlived him should change entirely his wishes as expressed in the will, and leave out entirely the blood relatives of his wife, who, of course, were also the blood relatives of Miss Lemly.

Testator's heirs were all collateral. They stem from these sources. One brother, James Peyton McKay, departed this life in 1912. His heirs consist of five children —James Peyton McKay, George Hollister McKay, Griffith Head McKay, Mrs. Louise McKay Lewis and Mrs. Helen McKay Winkleman. These, of course, are the nephews and nieces of testator. Another brother, H. E. McKay, died in 1935. His children are Hayden E. McKay and Eugene Reber McKay. They are the nephews of testator. The other heir of testator is his sister Mrs. E. A. Fleming. In other words, his blood heirs were the foregoing five nephews, two nieces and one sister. Now, let's see what he did for these heirs in his will. As to the first three—James Peyton McKay, George Hollister McKay, and Griffith Head McKay—he made for them no provision, but he gave a most natural reason for not

doing so. He said "I have not forgotton my nephews, Jas. Peyton McKay, George Hollister McKay and Griffith Head McKay, but knowing they are successful business men whom I love dearly, I am wishing them continued success, and hoping they will always live an upright christian life". Therein is expressed the natural and normal human reaction. He loved these nephews, but he gave them nothing because they were successful business men and did not need it. He wished to give to others whose needs were greater. Can it be said, with reason, this reaction and this decision depended upon whether Miss Lemly died before or after he passed to the great beyond? Where is the causal connection?

To each of his nieces Mrs. Louise McKay Lewis and Mrs. Helen McKay Winkleman, he gave a two thousand dollar United States bond, and then, in the clause providing for Mrs. Fleming, he added that if any cash was left in his estate, after payment of debts and the specific bequests, the balance of the cash in his estate should be divided equally between these two nieces and one other person. Apparently these nieces were married. Just why the testator thought this was a just distribution of his estate to them is not disclosed by the record but no reason is perceived why the death of Miss Lemly before or after his death could have had any bearing upon his judgment and his desires in that respect.

He gave to Hayden E. McKay a duplex on Princeton Street and to Eugene Reber McKay a residence on Spengler Street in the City of Jackson. He owned the fee in these properties and they were not acquired by inheritance from his wife. He gave them to his blood kin.

He gave to his sister Mrs. E. A. Fleming a $625.00 U. S. bond and $1,375.00 in cash, but, as to her family, he did not stop there. He gave to her daughter Lucy Van Fleming a two thousand dollar bond and to her son E. A. Fleming, Jr., a duplex at 148 Princeton Street, Jackson, Mississippi. This daughter and son were not heirs at law of testator. Did the testator intend to take from

them the property he had given them merely because Miss Lemly did, or did not, survive him? What bearing could that fact have upon the question?

Thus, it is seen that the testator well remembered by gifts all of his blood heirs except the nephews who were successful business men, and who, evidently in his opinion, did not need his bounty. But he did not forget them. He gave lasting expression of his devotion to them. But, in addition to conferring benefits on all of such heirs, other than the three, he also, as to his sister, went further and bestowed valuable gifts upon her children, who were not his heirs and would have received nothing had there been no will.

It will be noted the testator inherited from his deceased wife the entire property on High Street and a one-half undivided interest (Miss Lemly owning the other half interest) in the property on North State Street. It is significant he gave the first property to his wife's nephews and the second to her nieces. His own real property, not inherited from his wife, he devised to his own nephews; thus, apparently, in his own mind he thought such division equitable and just.

It is noteworthy also, as bearing upon the question being considered, that he empowered and directed Rebecca Lemly, a niece of his wife, to apportion and distribute his personal property among the legatees "who in such case may be entitled to share therein and her decision as to same shall be final". What possible bearing could the order of death as between himself and Miss Lemly have upon this expressed confidence in the fairness and good judgment of this niece? Why should all this be nullified merely because it happened Miss Lemly lived for a time longer than he did?

Again, of somewhat the same nature of thought, he nominated Hayden E. McKay, his own nephew, and Theron M. Lemly, his wife's nephew, joint executors in the will. He relieved them of the necessity of making bond. He had personal trust in them. He also conferred

power and authority upon Theron Lemly to collect all rents and income from his realty, for which service he was to receive 5% of the gross receipts. The death of Miss Lemly before or after testator could have no possible bearing upon these acts.

An examination of the form of the will discloses that the phrase relative to the time of the death of Miss Lemly at the beginning of Item Two did not relate, or become attached, to subsequent provisions thereof, so as to render such subsequent provisions dependent upon that phrase. Each subsequent provision is a separate paragraph. The beginnings thereof are complete and sufficient within themselves. For instance, he says "I will that the balance of my U. S. Bonds be divided as follows"; "It is also my will that Theron M. Lemly and Rebecca Lemly shall have my auto, and I hereby bequeath it unto them to be their property"; "I will two shares . . . " of stock to Theron M. Lemly. In one place he stated the beneficiaries named in the insurance policies upon his life should receive the full benefit of such policies. In another he said, "It is also my will that John Adam Lemly, have a crochet bed spread and African made by wife". As a matter of reason it is not conceived just why this testator could have desired all this to be changed and nullified merely because Miss Lemly survived himself for a while. We think this a typical case for application of the doctrine of gifts by implication, inherent within the will itself, and the clear intention of this testator should not be nullified and thwarted.

But able counsel for appellants, invoke the rule that heirs are favored in the construction of wills, and there is no presumption of an intention to disinherit them. There are two answers to that proposition in this case. The first is the will does not disinherit the heirs, other than the three nephews who were successful business men and who, apparently in the mind of the testator, did not need the property in comparison with the needs of the other beneficiaries, and the second is that when a testator has

disposed of part of his estate, as was certainly done in this case, there is no presumption of an intention to die intestate as to the remainder thereof. As was said in Richmond v. Bass, 202 Miss. 386, 32 So. (2d) 136, 137, "Then, too, a will should be so construed as to avoid partial intestacy, if by any reasonable construction this can be done".

It should be remembered, too, that the testator wrote this will himself. His disposition of his property, in the light of the circumstances surrounding him, certainly demonstrates he was educated in the goodness of heart, albeit the form of his expressions show he was not learned in his mind as to legal matters. He knew what he wanted done, and, in our opinion, he set clearly forth his intentions and purposes, although one more learned in such matters might have done so in more appropriate phrases.

The facts set forth above, descriptive of the circumstances surrounding the testator when he wrote his will, were agreed upon by the parties, subject, however, to the objection of appellants that such facts were irrelevant and incompetent. We think these facts were relevant and competent. Schlottmann v. Hoffman, 73 Miss. 188, 199, 18 So. 893, 55 Am. St. Rep. 527; Strickland v. Delta Investment Company, 163 Miss. 772, 137 So. 734; Cross v. O'Cavanagh, 198 Miss. 137, 21 So. (2d) 473.

The written agreements, endeavoring to make a division of the property, above set forth, were also introduced under stipulation of attorneys, subject to objection by able counsel for appellants as to their competency. The bill herein prayed for construction of the will and also for confirmation of these instruments, and for the latter purpose they were competent as within the scope of the bill. They were not competent on the issues of construction, and in our weighing of these questions we have not taken thought of them, as was no doubt true of the learned Chancellor below.

Affirmed.

**Montgomery, J.,** (dissenting).

I am unable to agree with the construction of item two of the will arrived at in the majority opinion. The late and lamented Judge Albert H. Whitfield in Moss Point Lumber Co. v. Board of Supervisors, 89 Miss. 448, 42 So. 290, 317, 873, wrote: ''The test is with me, and has always been, and always shall be, does the proposition, announced as law, square with sound principle and true reason? If so, I accept it, because it so squares; if not, no name, however great, shall be permitted to lead me into false paths.''

In my humble judgment, the majority opinion marks a departure from the established rules of construction of wills that have existed in this state for almost one hundred years. Let us look to those rules. They are so firmly established in the jurisprudence of this state that surely, at this late date, their soundness cannot be questioned. In construing a will, the court's paramount duty is to look to the language used by the testator in the whole will and ascertain therefrom the intention of the testator, at the time of the making of the will, and to then give effect to this intention unless contrary to the law or public policy. Cross v. O'Cavanaugh, 198 Miss. 137, 21 So. (2d) 473; Yeates v. Box, 198 Miss. 602, 22 So. (2d) 411; Brumfield v. Englesing, 202 Miss. 62, 30 So. (2d) 514; Temple v. First National Bank of Meridian, 202 Miss. 92, 30 So. (2d) 605.

In so ascertaining the intention of the testator, the court is permitted to look only to the will and the intention of the testator must be ascertained from the language there used. Yeates v. Box, supra. The court is bound by the words the testator employed. Simpson v. Watkins, 162 Miss. 242, 139 So. 400.

The court cannot consider what it believes the testator intended to say but it is bound by and must ascertain the testator's intention from what he did say. National Bank of Greece v. Savarika, 167 Miss. 571, 148 So. 649,

652. We there said: "In his expression, and not in his silence, we seek his meaning, and, when we exceed this rule, we make the will, and direct the way the bounty should be applied."

Bearing steadily in mind these binding rules of construction, let us look to the will.

Item one of the will reads as follows:

"If she be living at my death, then it is my will that my sister in law Miss Elizabeth Cary Lemly, my deceased wife's sister of Jackson, Miss. shall have and if she be alive at my death then I do hereby devise and bequeath unto her, the said Miss Elizabeth Cary Lemly in fee simple all the income of my Estate of every description and all undivided interest owned by me in lands, needed for living expense and comfort as long as she may live.

"All income kept separate and all property kept in good rental condition all expenses paid out of this fund as well as the amount needed for Miss Bessie Cary Lemly's comfort.

"The income will be from the following described property. My interest in Rooming house 520 North State St.; apartment house 412 High St., two duplexes at 144 & 148 Princeton St.; one dwelling at 1004 Spengler St. and also any income from Bonds or stock."

It is clear that this item conferred upon Miss Lemly a limited life estate in trust to be used for her needs and comfort, subject to the limitations therein provided and she having survived the testator this limited life estate in trust vested in her on the death of the testator.

Miss Lemly died on October 17, 1947, and we must again look to the will and ascertain the intention of the testator as to who should take at her death.

Item two of the will reads: "But if at my death Miss Elizabeth Cary Lemly shall be dead, then my will is that all of the above designated property real and personal referred to above in Item One of this will shall go to the nieces and nephews or others designated, and be divided as listed."

There is no lawful way to construe this or any other will but by ascertaining the testator's intention from the language used in the will. "But, if at my death Miss Elizabeth Cary Lemly shall be dead, then my will is . . . ." is the express language of the testator in item two. The majority opinion construes this and ascertains the testator's intention to be: "But, if at my death Miss Elizabeth Cary Lemly shall be *living*, then at her death my will is . . . ." By construction the majority opinion changes the word "dead" contained in item two to "living", in direct and open contradiction to the express language of the will. They point to no language contained within the four corners of the will from which the court can ascertain the intention of the testator to use the word "living" instead of the word "dead" that he actually used. They go wholly outside the will and gather this supposed intent on the part of the testator from parol testimony taken by the chancellor and showing: 1. That the testator lived on good terms with Miss Lemly, 2, that she was in wretched health, 3, that she suffered with cancer and was approaching the end of her life, 4, that McKay inherited part of the property from his wife, and 5, that some of the alleged beneficiaries made conveyances between themselves. From this parol testimony, and it alone, they seek to ascertain and do ascertain the supposed intention of the testator. With all deference to the superior wisdom of my brethren, my mind cannot reconcile this procedure with the solemn duty of this court, under the established law of the land, to ascertain the intention of the testator solely from the actual language used by him within the four corners of his will, giving effect, if possible, to each and every part thereof. In addition, though the will be silent thereasto, they in effect change the language of the will reading: "But if at my death Miss Elizabeth Cary Lemly be dead, then my will is that all the above designated property real and personal . . . shall go to the nieces and nephews or others designated . . . ." not only

so as to change the word "dead" and substitute therefor the word "living" but also to add the words "at her death", and thereby cause the will to read: "But if at my death Miss Cary Lemly be 'living' then my will is that 'at her death' all of the above designated property real and personal . . . shall go to the nieces and nephews or others designated . . . ". If, as we said in Simpson v. Watkins, 162 Miss. 242, 139 So. 400, the court, in ascertaining the intention of the testator, is confined in its search to the intention shown by the language contained in the will and is bound by the words the testator employed therein, where can justification in the law be found for lifting bodily from the will the word "dead" and reading into the will its antonym "living". If, as we said in National Bank of Greece v. Savarika, 167 Miss. 571, 148 So. 649, the court cannot consider what the testator might have intended to say but must ascertain the testator's intention from what he actually did say, what right have we to take this item two of his will and from a presumed intention, arrived at from sources wholly outside the will, write into the will a disposition of his property at the death of Miss Cary Lemly in the event she survived him, when there is neither any such provision written by the testator in the will, nor any language therein used by him showing such to be his intention. I am deeply concerned over the majority opinion. I fear it is a departure from our former decisions on the construction of wills.

The language of the will is plain. Its meaning is clear. What James U. McKay said in his will was: (1) "If she be living at my death, then it is my will that my sister-in-law Miss Elizabeth Cary Lemly" take a limited life estate in trust, and (2) "But if at my death Miss Elizabeth Cary Lemly shall be dead, then my will is that all of the above designated property real and personal referred to above in item one of this will shall go to the nieces and nephews or other designated and to be divided as listed. . . . " These are the only two contingencies

listed in the will. The will did not say how the property should go at the death of Miss Elizabeth Cary Lemly, in the event she should survive him. Only he had the right to make his will. We have no power to make a will for him or to reform the one he so made.

According to the light of my limited and perhaps feeble understanding, James U. McKay died intestate except as to the limited life estate in trust devised to his sister-in-law, Miss Elizabeth Cary Lemly, and on·her death his property descended by the laws of descent and distribution to his heirs at law.

**Hall, J.**, and **McGehee, C. J.**, join in this dissent.

**Alexander, J.**, (concurring).

The intent of the testator, his will, is the object of all judicial research. Words are the vehicles by which record of such will is made. The meaning of these symbols of thought and purpose must be drawn from the entire area of the will. The controlling opinion properly emphasizes that the testator should not be held to have intended to hazard the entire disposition of his estate upon the fortuitous and quite irrelevant incident that Elizabeth Cary Lemly should predecease him. It is evident that the testator gave the greatest measure of solicitude to the ultimate repositories of his estate. It does not exceed reason nor transgress judicial propriety to conceive that to the testator these beneficiaries were of controlling concern, that this list was made up not only with meticulous care but with an eye to legal and moral obligations. Property enjoyed by him as part of his deceased wife's estate he sought to place in the hands of those who were her blood ·relatives and who but for his marital rights would have been the natural objects of her bounty. Property accruing from his labors and earnings he sought to distribute among those who were nat-

ural objects of his bounty. Among these were heirs both of his wife and of himself.

No one was to enjoy the estate in fee until the death of Elizabeth Cary Lemly. The time of her death as pointed out in the controlling opinion could not have been intended to be a precedent condition to this distribution. To hold otherwise would impute to the testator a purpose to put these objects of his bounty in pawn, to wager their heritage upon the caprice of an hour glass. Does reason or logic support an assumption that he intended intestacy should under any circumstance, occur?

Within the four corners of a will are words, not only, but logic, purpose and natural instincts. We should not by seizing upon words cry down the language of these other agents of construction.

Let a simple illustration suffice, one which, if invented, would risk banality, but is made apt by being lifted from the will itself. In one of his numerous bequests he provided ''It is also my will that John Adam Lemly, have a crochet bed spread and African made by wife''. Were we addicted to a ruthless literalism we would refuse to construe therefrom an intent to bestow an afghan and descend to an insistence upon a transfer of some human chattel. Here is a fit through trivial illustration that if mere words fall short of attaining the goal of a testator's intent the courts will elaborate them to that end.

We should not suffer a testamentary purpose to be quarantined within the solitary isolation of a chance and awkward phrase, and denied exposure to those related indicia of the testator's will which could lend to it the color and vitality of a restored meaning, and save it from the ravages of a hapless intestacy.