ROBERTSON, Presiding Justice,
for the Court:
James H. Nobles, Jr., the 35-year-old grandson of D. D. Low, Deceased, appeals from the decree of the Chancery Court of Sharkey County, construing Items 9 and 11 of the Last Will and Testament of D. D. Low, deceased.
Low’s Last Will and Testament was probated shortly after his death on January 19, 1930, and the trust provisions of Item 9 of the will, as influenced and affected by the spendthrift trust provisions of Item 11, had been construed as providing for the establishment of one overall Testamentary Trust with one Testamentary Guardian and six separate and distinct divisions thereof (a trust estate for each of the six minor children). The Estate operated under this construction and interpretation without objection from 1930 until July 11, 1977, when Petition for Construction of the Will, to confirm this construction of 47 years, was filed and appellant Nobles for the first time voiced his objections on September 7, 1977.
Appellant Nobles had shared in the net income from the estate of his grandfather since March 13, 1966, the date of the death of his mother, Martha Lee Low Nobles, one of the six children of D. D. Low. Appellant and his sister, Lenoir Low Nobles, a thirty-one year old ward of the court who is under a legal conservatorship, were the only children of their deceased mother, Martha Lee Low Nobles.
We think the unusual and tragic circumstances existing in the D. D. Low family at the time the will was prepared and executed had a great deal to do with its provisions, the language of which was at times quite specific but at other times became vague and ambiguous.
D. D. Low’s wife, Sarah R. Low, died in childbirth in June of 1929, when William W. Low, their sixth child, was born. About three months after her death, in September, 1929, D. D. Low was seriously injured in an automobile accident. He was confined primarily in a Memphis, Tennessee, hospital from the date of the accident until his death on January 19, 1930. His will was prepared by W. H. Clements, an attorney of Rolling Fork, Sharkey County, Mississippi, and was executed by Low in the Memphis hospital on December 28, 1929, about three weeks before his death, with two medical doctors and a registered nurse as attesting witnesses.
*704 At the time he signed his will, he was a widower and dying man, with six minor children ranging in age from 6 months to 16 years. His principal assets were two large plantations of about 1700 acres each in Sharkey County, Mississippi. Mississippi and the whole country were in the throes of the Great Depression of 1929.
Confronted with almost insurmountable and unsolvable problems, Low had to do the best he could to solve them in the short time he had to live. We believe that his paramount concern, overriding everything else, was to provide for his six minor children, already without a mother and soon to be without a father. He wanted to protect them and their children (if any they had in the future) from losing his and their estate, at least until the death of his last surviving child.
His Will consisted of 6 legal-size typed pages. Items 9 and 11 of the Will were construed by the court on the petition of the five surviving adult children of Low.
These two provisions provided and directed:
“ITEM 9. After the payment of all costs, expenses, taxes, upkeep and maintenance of my estate, I give, devise and bequeath all the rest and residue of my estate of which I may die seized and possessed unto The National City Savings Bank & Trust Company of Vicksburg, and its successor, as Trustee to be held under the terms, trust purposes and conditions set forth as follows, to-wit:
I nominate, constitute and appoint The National City Savings Bank & Trust Co. of Vicksburg, and its successor, as Testamentary Guardian for each of my six children, and I request that said Guardian, and its successor, as hereinabove provided, shall not be required to give bond for the faithful performance of its duties as such Guardian.
I further request that Mrs. Mattie Lee Kibler, aunt of my children, shall have their custody and control, and the allowance made for the maintenance, support, comfort and education of my children shall be paid over to her by said Guardian, taking her receipt therefor, and she shall not be required to account or report for her expenditures. In the event of her death I request her daughter, Ora Louise Kibler, to act in the same capacity and with like power and discretion. Upon the death or marriage of Ora Louise Kibler, I request my nephew, Rufus Hampton Low, to act in her place and in the same capacity, and with like power and discretion.
The Trustee shall set apart six separate and distinct trust estates, one for the sole benefit of each of my children, namely, Ollie Louise Low, Lenoir Dickson Low, Martha Lee Low, Sarah Ruffin Low, David D. Low, Junior, and William White Low. The net estate coming into the hands of the said bank as Executor and/or Trustee shall be set apart equally, as soon as possible in the trust estates herein created. The Trustee shall pay quarterly to the Guardian of any minor child, or to the person in whose custody any minor child is held any part or all of the net income from the respective child’s trust estate, as is necessary in the sole discretion of the Trustee for his or her proper support, comfort, maintenance and education. In addition to the quarterly income payments, the Trustee shall have power and authority to use any part of the principal of each child’s respective trust estate, if necessary, in the sole discretion of the Trustee, for his or her proper support, maintenance and education. As and when any daughter attains the age of twenty-one years, the Trustee shall then pay in equal quarterly installments to said daughter the net income from her respective trust estate as long as she shall live. As and when any son attains the age of twenty-one years, the Trustee shall then pay in equal quarterly installments to said son the net income from his respective trust estate as long as said son shall live. The Trustee shall, however, have power and authority to pay to any son all or any part of the principal of his trust estate should he need the same to invest in any business, *705 provided the Trustee in its sole discretion concludes that such an investment is meritorious, and that said son has shown proper business judgment to operate said business.
The issue of any deceased child to immediately take such child’s trust estate, should he or she leave issue, or such deceased child’s trust estate to be divided equally and added to the surviving children’s trust estate, should he or she die without issue. Should my last surviving child die without issue, the amount of the trust estate shall be paid to my lawful heirs, according to the laws of descent and distribution in the State of Mississippi. A receipt from any Guardian, custodian or beneficiary thereof shall be a full discharge of the Trustee for what it represents.

ITEM 11. Neither the principal nor the income from the trust estate of any one of my children shall be liable for the debts of any beneficiary hereof, nor shall the same be subject to seizure by any creditor or any beneficiary under any writ or proceeding at law or in equity, and no beneficiary hereunder shall have any power to sell, assign, transfer, encumber or in any other manner anticipate or dispose of his or her interest in the trust estates or the income produced thereby.”
In its decree of February 27, 1978, the Court said:
“2. That the terms and provisions of the said last will and testament of the said D. D. Low be and the same are hereby construed as follows:
A. That said deceased testator created a spendthrift trust or trusts to exist and to remain in being under the terms thereof until the death of said deceased testator’s last surviving child, at which time the subject trust or trusts were to automatically terminate.
B. That in the interim period, at the death of any of said deceased testator’s children with issue, said issue was to take such child’s separate trust estate or part of the overall trust estate, the same being the right to receive the income due from such child’s separate trust estate or part of the overall trust estate until the death of said deceased testator’s last surviving child, and, further, the potential right to inherit a vested interest in the assets or corpus of such child’s separate trust estate or part of the overall trust estate should such issue survive all of said deceased testator’s children; that also in said interim period, should any of said deceased testator’s children die without issue, such child’s separate trust estate or part of the overall trust estate, the same being as above defined, was to be added to and become a part of the separate trust estate or part of the overall trust estate of each of said deceased testator’s surviving children and of the separate trust estate or part of the overall trust estate of each of said deceased testator’s predeceased children with issue in being at that time, in equal shares per stirpes; that, in addition, in said interim period, should any of the issue of a deceased child of the said deceased testator die without issue, such deceased issue’s interest in such deceased child’s separate trust estate or part of the overall trust estate was to be added to the interest of the surviving issue, if any, of such deceased child of the said deceased testator in equal shares per stirpes, or should there be no such surviving issue of such deceased child, such deceased child’s separate trust estate or part of the overall trust estate was to be added to and become a part of the separate trust estate or part of the overall trust estate of each of said deceased testator’s surviving children and of the separate trust estate or part of the overall trust estate of said testator’s predeceased children with issue in being at that time, in equal shares per stirpes; that at the death of the deceased testator’s last surviving child, said deceased testator’s trust estate or estates was or *706 were to automatically terminate, and the assets or corpus of each child’s separate trust estate or part of the overall trust estate was to then immediately vest in such child’s issue, in equal shares per stirpes; that in the event of the death of said deceased testator’s last surviving child without issue, the assets or corpus of such child’s separate trust estate or part of the overall trust estate was to immediately vest in said deceased testator’s then lawful descendants, in equal shares per stirpes, which said descendants would be the same person or persons as the then issue of said deceased testator’s deceased children; and that as herein-above set out, the spendthrift trust provisions of said deceased testator’s said last will and testament were to exist and to remain in effect until the death of his last surviving child.”
The appellant’s contention, both in the lower court and in this Court, is that D. D. Low, upon his death, intended for the Testamentary Trustee in Item 9 of his Will to immediately set up six separate and distinct trust estates, one for each of his six minor children, and that each trust estate would own an undivided one-sixth interest in all of the property and assets of his estate. Appellant next argues that when a child of D. D. Low dies, leaving issue, that the trust estate of the deceased child would immediately go to his or her issue and the issue would take fee simple title to the undivided one-sixth interest of their deceased parent in the overall trust estate. If the chancellor had accepted Nobles’ argument and had set aside to him an undivided one-twelfth fee simple interest in his grandfather’s estate, then Nobles could have immediately demanded that the only real asset of the estate, 1768-acre Vickland Plantation, be partited in kind or sold.
Item 11, the spendthrift trust provision, would thereby be defeated, even though the language of Item 11 was that:
“[N]o beneficiary hereunder shall have any power to sell, assign, transfer, encumber or in any other manner anticipate or dispose of his or her interest in the trust estates or the income produced thereby.”
It was clearly Low’s intent that this should not happen until his last surviving child had died.
The construction contended for by appellant would also cut off any right of his sister (a ward of the court) to inherit more than a one-twelfth interest. This would definitely be to her disadvantage because her aunt, Lenoir Low Owen Sanders, 62 years old, and her uncle, William W. Low, 48 years old, are without issue.
In Yeates v. Box, 198 Miss. 602, 22 So.2d 411 (1945), this Court gave these guidelines:
“The basis of all constructions of wills is to seek the intention of the testator, and that this be ascertained from its language gathered from the whole will. It is necessary to consider the entire purpose of the testator from the language of the will, taking into consideration and giving due weight to every word therein. Then, ‘Once the actual intent of the testator at the time of the making of the will has been in this way ascertained, all minor, subordinate, and technical rules of construction must yield to this paramount intent thus ascertained.’ ” 198 Miss, at 610, 22 So.2d at 414.
In Cross v. O’Cavanagh, 198 Miss. 137, 21 So.2d 473 (1945), this Court offered these further instructions:
“The paramount duty of the court is to ascertain the intent of the testator, gathered from the language used, in the light of the circumstances surrounding the execution of the will, and give effect to such intent unless contrary to law or public policy. (Emphasis added).

“A construction of ambiguous provisions which results in a just and reasonable disposition of the property will be adopted in the absence of clear intent to the contrary.” 198 Miss, at 147, 21 So.2d at 474.
In the later case of Paine v. Sanders, 242 Miss. 392, 135 So.2d 188 (1961), it was said:
*707 “Words omitted from a will may, in some circumstances, be supplied by the court whenever it is necessary to effectuate the testator’s intention as expressed in the will.” 242 Miss. at 399, 135 So.2d at 191.
The language of Item 1 of his Will sheds light on how Low intended for his overall intent and purpose to be carried out. The Will provides:
“ITEM 1. I nominate, constitute and appoint The National City Savings Bank & Trust Company of Vicksburg, and its successor, as Executor herein, and after the said National City Savings Bank & Trust Company of Vicksburg, and its successors, has performed and fulfilled its duty as such Executor, then the National City Savings Bank & Trust Company of Vicksburg, or its successor, is hereby appointed Trustee to fulfill the terms and conditions of the trust hereinafter set out. Having full faith and confidence in the said National City Savings Bank & Trust Company of Vicksburg as the Executor, I desire that no bond shall be required of it as Executor or Trustee in the performance of its duties as such. The appointment of the National City Savings Bank & Trust Company of Vicksburg as Executor and Trustee shall extend to and include the successor of the said National City Savings Bank & Trust Company of Vicksburg, and if it is consolidated or merged with another or other corporate fiduciary, or a national banking association with fiduciary powers granted by the United States of America unto the fiduciary formed by such consolidation or merger.” (Emphasis added).
We cannot help but note that throughout Item 1 he speaks of the “Trustee” and the “fiduciary” and “the trust” in the singular.
In our opinion, this means that when Low got to Item 9 and said:
“The Trustee shall set apart six separate and distinct trust estates, one for the sole benefit of each of my children, namely, Ollie Louise Low, Lenoir Dickson Low, Martha Lee Low, Sarah Ruffin Low, David D. Low, Junior, and William White Low.”
he intended, for bookkeeping purposes, to have the overall trust estate divided into six different portions, one for each child. This makes sense because each child’s “support, maintenance and education” would in all probability be in different amounts, and it would be fair, equitable and just that each child’s expenses should be charged to and posted on the books to that child’s separate estate, and not that the overall estate in hodge podge be charged with the varying expenses of each child.
After carefully studying the Will as a whole, taking into consideration and giving due weight to every word therein, and after carefully considering the language used in the light of the circumstances surrounding its execution, we are of the opinion that the chancellor has correctly construed the provisions of the Will and has reached a fair, just and equitable solution for all parties litigant.
For these reasons, the decree of the Chancery Court of Sharkey County construing the Last Will and Testament of D. D. Low, deceased, is affirmed.
AFFIRMED.
PATTERSON, C. J., SMITH, P. J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.