IRVING, J., for the Court.
 

 ¶ 1. This appeal arises out of a complaint filed by Orville Lee Johnson against Rita Frances Burford Herron, John Cal Bur-ford Jr., and Patricia Grantham (collectively referred to as Burford unless context requires specificity) in the DeSoto County Chancery Court in 2005. After the completion of discovery, Burford filed a motion for summary judgment, alleging that judicial and equitable estoppel barred Johnson’s claims for relief. The chancery court granted the motion. Feeling aggrieved, Johnson appeals and contends that the chancery court erred in (1) employing an incorrect standard of review; (2) finding that there were no genuine issues of material fact; (3) awarding summary judgment and then overruling Johnson’s motion for reconsideration; (4) not granting Johnson partial summary judgment due to the validity of deeds to Burford and Herron; (5) finding that a settlement agreement between Johnson, Burford, and Herron dealt with all assets of the estate; (6) finding that Johnson benefitted from the settlement agreement; (7) finding that Johnson and Herron were adversarial parties; (8) finding that judicial estoppel bars Johnson’s claims; (9) finding that equitable es-toppel bars Johnson’s claims; (10) holding that Johnson’s father voluntarily abandoned his homestead; (11) finding that Herron did not intentionally mislead Johnson about various properties; (12) failing to find undue influence by Herron; (13) finding no presumption of undue influence; (14) finding that joinder of a spouse in deeds was not necessary; (15) failing to find that Johnson’s father was an omitted spouse; (16) failing to find that Herron had a conflict of interest; and (17) applying the doctrine of laches.
 

 
 *1162
 
 ¶ 2. We find that there is no genuine issue of material fact as to whether Johnson’s recovery is barred due to judicial estoppel. This finding makes Johnson’s fourth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth issues moot. Johnson’s remaining issues will be discussed during our analysis of how judicial estoppel applies in this case.
 

 ¶ B. Since we find that judicial estoppel was properly applied, we affirm the chancery court’s grant of summary judgment.
 

 FACTS
 

 ¶ 4. On August 31, 1958, Chester Johnson married Mary B. Rowland. Johnson is Chester’s son from a previous marriage; Chester and Mary had no children together. In May 1963, Mary conveyed a piece of property in DeSoto County that was titled solely in her name to herself and Chester. The record indicates that Chester and Mary lived in a house on the property as their marital home at the time of the conveyance. Thirteen years later, in December 1977, Mary executed her last will and testament. This will provided nothing for Chester; instead, it left everything to Burford and Herron, who are Mary’s nephew and niece, respectively. Shortly thereafter, on March 30, 1978, Chester and Mary reconveyed the DeSoto County property to Mary alone. In August 1986, Mary deeded the DeSoto County property and a piece of property in Tate County to Burford and Herron.
 

 ¶ 5. In May 1986, Mary was diagnosed with lung cancer. After a stay in the hospital, Mary moved to the property in Tate County.
 
 [1]
 
 Also, in May 1986, Chester moved from the marital home in DeSoto County to an assisted-living facility in Memphis, Tennessee. In November 1986, Chester was committed to the Mississippi State Hospital at Whitfield. The record indicates that Chester never lived at the Tate County property with Mary, nor did he ever return to the property in DeSoto County. On December 27, 1986, shortly after Chester’s commitment, Mary died of lung cancer.
 

 ¶ 6. On January 20, 1987, Mary’s will was probated. Herron and Burford were appointed as coexecutors of Mary’s estate, in accordance with Mary’s will. On September 2, 1987, Herron was appointed as Chester’s conservator. The record reflects that Herron acted as conservator rather than Johnson because Johnson was unwilling to act as conservator for his father. In 1991, Johnson’s attorney, Dan Little, contacted Gaines Baker, an attorney for Chester’s conservatorship, to inquire about property in DeSoto County and to inquire about the use of conserva-torship funds. On January 5, 1998, the DeSoto County property was conveyed to Grantham by Herron and Burford. A little more than four months later, on May 23,1998, Chester died at Whitfield.
 

 ¶ 7. On March 14, 2001, Baker sent con-servatorship papers to Little and attempted to clarify what property had been owned by Chester. On May 14, 2002, Johnson and Herron were appointed as coadministrators of Chester’s estate. On August 1, 2001, Herron, Johnson, and Bur-ford entered into a settlement agreement to close Chester’s estate. The relevant terms of the agreement are as follows:
 

 Whereas, O.L. Johnson is the only child and sole heir at law of Chester L. Johnson and under the laws of intestacy would be entitled to inherit 100% of all assets of Chester L. Johnson;
 

 
 *1163
 
 Whereas, Rita B. Herron has been serving as Conservator of the estate of Chester L. Johnson, beginning in 1987 and until his death and to the present time, and is the niece of Mary Burford Johnson, who was married to Chester L. Johnson at the time of her death in 1986;
 

 Whereas, John Cal Burford, Jr.[,] is the nephew of Mary Burford Johnson;
 

 Whereas, Rita B. Herron believes and claims that Chester L. Johnson had a Last Will and Testament, which has been lost, by which Will O.L. Johnson would have received an undivided one-half of his father’s estate and Rita B. Herron and John Cal Burford, Jr.[,] would receive the other one-half of his estate;
 

 Whereas, there has been dispute and disagreement in regard to the distribution of the assets of Chester L. Johnson, but First and Second Parties desire to resolve their differences by a compromise agreement regarding the distribution of the assets of Chester L. Johnson;
 

 Now, therefore, for good and valuable consideration, receipt of which is hereby acknowledged, and the mutual benefit to each, First Party and Second Party do hereby promise and agree as follows:
 

 1) The following assets belonging to the estate of Chester L. Johnson shall be divided 60% to O.L. Johnson; 20% to Rita B. Herron; and 20% to John Cal Burford, Jr., to-wit:
 

 Money Market Account ... and checking account ... in the amount of $27,659.22 as of February 6, 2001, together with any accrued interest, and the proceeds from Southern Farm Bureau Life Insurance Company policies 45248F and 116659, together with any accrued interest.
 

 2) It is understood and agreed that Dan Little has been representing O.L. Johnson and C. Gaines Baker has been representing Rita Herron during the extended period of the disputes and disagreements and that O.L. Johnson shall be solely responsible for the attorney fees of Dan Little, and Rita B. Herron and John Cal Burford, Jr.[,] shall be solely responsible for the attorney fees of C. Gaines Baker.
 

 3) It is further understood and agreed that a copy of this agreement may be used to send to Southern Bureau Life Insurance Company with the directions that the proceeds from the two policies as described above shall be paid 60% to O.L. Johnson, 20% to Rita B. Herron, and 20% to John Cal Burford, Jr.
 

 4) It is further understood and agreed that pursuant to this agreement, Rita B. Herron shall distribute 60% of the bank proceeds as described above to O.L. Johnson; 20% to Rita B. Her-ron; and 20% to John Cal Burford, Jr.
 

 ¶ 8. On September 11, 2002, Johnson and Herron filed a petition to close Chester’s estate and be discharged as administrators. The petition, which both Johnson and Herron signed, stated: “All parties, O.L. Johnson, your co-petitioner and sole heir of Chester Lee Johnson, Rita B. Her-ron, your co-petitioner ..., and John Cal Burford, Jr., ... have entered into a Settlement Agreement dated August 1, 2001[,] for the distribution of
 
 all assets of the
 
 estate.” (Emphasis added).
 

 ¶ 9. Also on September 11, 2002, Chester’s estate was closed and its assets were distributed according to the terms of the settlement agreement. The court order closing the estate specifically noted that “said Settlement Agreement is adequate and fair for the settlement of
 
 all assets of the estate.”
 
 (Emphasis added). At some
 
 *1164
 
 point after the closing of Chester’s estate, his last will was discovered, wherein Johnson was intended to receive half of his estate, while Herron and Burford were entitled to the other half of the estate.
 

 ¶ 10. Almost three years later, on April 5, 2005, Johnson filed the complaint that gave rise to the present appeal. An amended petition was filed on December 2, 2005, in which Johnson asked: (1) that the deeds to the DeSoto County and Tate County properties be voided, making Johnson the sole owner of the properties; (2) that the court make a finding that Herron had violated her fiduciary duties to Johnson, thus entitling Johnson to a judgment in excess of one hundred thousand dollars; (8) that the court order that Johnson was entitled to half of Mary’s estate because Chester was a pretermitted spouse under the terms of Mary’s will; (4) that the court order that Grantham was not an owner of the De Soto County property or that her percentage of ownership be determined; and (5) that he be granted attorney’s fees, costs, legal interest, and any other monetary damages that the court found he was entitled to.
 

 ¶ 11. Burford and Herron responded to the complaint in separate answers on April 17, 2006. In their answers, Burford and Herron alleged counterclaims for' slander of title, requested damages, and asked that Johnson be ordered to pay for their reasonable attorney’s fees and expenses. On May 16, 2006, Johnson filed an answer to Burford’s and Herron’s counter-claims. In his answer, Johnson admitted that Mary had lived in Tate County after being diagnosed with lung cancer, and that Chester stayed “in a series of nursing care facilities in 1986.” The answer also admitted “that an Order to Distribute Estate Assets and Discharge Administrators was entered on September 11, 2002, Rita Burford Herron having failed to advise the court of the other assets rightfully belonging to Chester....” In addition to alleging that there was no merit to Burford’s and Herron’s claims, Johnson’s answer also contended that Burford and Herron possessed unclean hands.
 

 ¶ 12. On January 25, 2007, during a deposition, Johnson stated that he had no proof to support the claims in his complaint. When asked: “So what you’re telling me is, this is your [c]omplaint but you don’t have any proof to support it? You just don’t like it,” Johnson responded: “That would be a fair assumption of choice of words, yes.” When questioned as to what witnesses he planned on calling, Johnson stated that he had no witnesses to support his allegations. On August 7, 2007, Burford and Herron filed a motion requesting summary judgment against Johnson as to (1) his interest in the DeSo-to and Tate County properties, (2) any breach of Herron’s fiduciary duties, and (3) Johnson’s ownership interest in Mary’s estate. On November 20, 2007, Johnson filed a response and motion in opposition to Burford’s and Herron’s motion for summary judgment.
 

 ¶ 13. On April 9, 2008, the chancery court granted summary judgment on behalf of Burford and Herron. The court’s order incorporated oral findings that were issued by the chancellor on February 6, 2008. At the outset of the February 6 hearing, the court noted that “the evidence must be reviewed in the like [sic] most favorable to the party against whom the motion has been made. In other words, the defendant who filed this motion for summery [sic] judgment has a great hill to climb for this Court to grant a motion. ...” The chancellor further found at the February hearing that: “This Court believes that judicial estoppel precludes Orville Lee Johnson, plaintiff, from serving as coadministrator for his father’s [e]state,
 
 *1165
 
 joining in the petition to close the [e]state, and now filing suit to contest assets that he agreed [sic] at the closure of the [estate.” The chancery court also found that equitable estoppel mandated the grant of summary judgment against Johnson.
 

 ¶ 14. On April 11, 2008, Johnson filed a motion for reconsideration or to set aside the court’s order. The motion alleged that the chancery court’s order was in error in finding that all assets of Chester’s estate had been properly distributed by the settlement agreement and ensuing order closing the estate. Johnson specifically contested the chancery court’s finding that he was estopped from making “later claims for later discovered assets.”
 

 ¶ 15. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 16. We find that the chancery court properly found that Johnson is judicially estopped because he acted as coadminis-trator of his father’s estate. As coadmin-istrator of his father’s estate, Johnson had an obligation to collect property that belonged to his father. When he assumed his role as coadministrator, Johnson took an oath that included the following: “he will make true and perfect inventory of the said goods, chattels, and credits and a just account wherein thereto required.” Furthermore, it is clear that Johnson ben-efitted from an expeditious closing of his father’s estate. In fact, had Chester’s missing will been discovered prior to the closing of the estate, Johnson presumably would have received ten percent less of his father’s estate.
 

 ¶ 17. Johnson argues that, prior to 1978, Chester: (1) received treatment for colon cancer, (2) developed an alcohol and drug dependency, and (3) began to suffer from mental disease and incompetency. However, there is no independent evidence in the record to corroborate the latter two of these statements.
 
 [2]
 
 Johnson further argues that Chester’s incompetency invalidated his conveyance of the DeSoto County property back to Mary. Johnson also contends that the DeSoto County property was Chester’s homestead when Mary deeded the land to Burford and Herron. Finally, Johnson contends that Chester’s interest in the DeSoto County and Tate County properties was discovered after Chester’s estate had been distributed pursuant to an agreement to split the estate between Johnson, Herron, and Burford.
 

 ¶ 18. We apply a de novo standard of review when reviewing a grant of summary judgment.
 
 Guidant Mut. Ins. Co. v. Indemnity Ins. Co. of N. Am.,
 
 13 So.3d 1270, 1275(¶ 13) (Miss.2009). According to Rule 56(c) of the Mississippi Rules of Civil Procedure: “The judgment sought shall be rendered ... if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” In considering the evidence that has been presented, a trial court “must carefully review all evidentiary matters in the light most favorable to the nonmoving party.”
 
 Guidant,
 
 13 So.3d at 1275(¶ 13) (citing
 
 Wise v. United Servs. Auto. Ass’n,
 
 861 So.2d 308, 311(¶ 6) (Miss.2003)). As we have already noted, the chancery court noted early in its ruling that it was bound to view the evidence in the light most
 
 *1166
 
 favorable to the non-moving party, here Johnson.
 

 Judicial Estoppel
 

 ¶ 19. We find all of Johnson’s contentions without merit due to judicial estop-pel. Our supreme court has discussed the concept of judicial estoppel in
 
 Dockins v. Allred,
 
 849 So.2d 151, 154-55(¶¶ 7-8) (Miss.2003):
 

 Because of judicial estoppel, a party cannot assume a position at one stage of a proceeding and then take a contrary stand later in the same litigation.
 
 Banes v. Thompson,
 
 352 So.2d 812, 812 (Miss.1977). The statutory penalty is applied to both real and personal property. Miss.Code Ann. § 11-3-23. The heart of this issue is the amount in controversy on appeal. The trial court, at Allred’s urging, set the amount in controversy at 21.53% of the attorney’s fee. Allred stated, “the amount of cash in controversy is the difference between 28.47% and 50%.” Because of the firm’s argument at the hearing to set the amount in controversy, Allred cannot now assert that the amount in controversy was greater than the 21.53% of the fee the firm claimed.
 
 Judicial estoppel precludes a party from asserting a position, benefitting from that position, and then, when it becomes more convenient or profitable, retreating from that position later in the litigation.
 
 Dockins’s claim that the entire amount was in controversy (to the extent such a claim was made) does not face such a bar. “[W]hen the party making the prior statement, which is inconsistent with his position in the present action, has not benefitted by the assertion, the doctrine should not be applied.”
 
 Mauck v. Columbus Hotel Co.,
 
 741 So.2d 259, 265 (Miss.1999) (citing
 
 Thomas v. Bailey,
 
 375 So.2d 1049, 1053 (Miss.1979)). Doc-kins did not benefit from his assertion that there was more than 21.53% of the fee in controversy. Allred, however, did benefit from its stance, and it is es-topped from asserting a contrary position in a later proceeding involving the same controversy.
 

 (Emphasis added). Likewise, Johnson cannot now take a position that is opposed to his previous position, which was to his benefit at the time. The record reflects that Johnson was aware of the properties in DeSoto County and Tate County when he agreed to close his father’s estate, as shown by his inquiries about the properties, which he testified began in the late 1970s. As already discussed, the settlement agreement asserted that all of the assets of the estate had been determined and disbursed. Although the settlement agreement only referred to the then-known assets of the estate, the petition joined by Johnson over a year later affirmatively stated that it was for “all assets of the estate.” A reasonable assumption is that Johnson still had questions about other property when he entered into the settlement agreement, and that he then researched those questions over the course of the next year prior to signing the petition to close the estate. Furthermore, as the chancery court noted, all of the disputed deeds had been recorded years prior to this litigation. There is nothing in the record to suggest that Burford or Herron attempted to keep the deed hidden from Johnson or otherwise interfered with his inheritance.
 

 ¶ 20. Under the terms of the agreement reached in the estate closing, Johnson received sixty percent of the estate’s assets, while Burford and Herron split forty percent of the estate between themselves. The will that was later discovered, and that would have presumably been probated had it been discovered in time, granted Johnson only fifty percent of his father’s
 
 *1167
 
 estate. Clearly, Johnson benefitted from the closing that was negotiated for the estate. Johnson cannot now ask the chancery court to undo the settlement agreement simply because it would be more profitable for him to do so.
 

 ¶21. Johnson contends that estoppel cannot apply in this case because judicial estoppel requires that the parties be involved in a prior adverse proceeding.
 
 See, e.g., In re Estate of Blanton,
 
 824 So.2d 558, 563-64 (¶¶ 17-18) (Miss.2002). Johnson claims that he was not involved in a prior adverse proceeding with Burford and Herron. We note that, technically, both Johnson and Herron acted as coadminis-trators of Chester’s estate. However, we agree with the conclusion of the chancery court in this regard, which stated: “The parties were clearly adverse in the regards [sic] to the assets of the [e]state and the respective interest of the beneficiary. All parties were represented by counsel, and executed a settlement agreement to resolve their dispute ... and disagreement!,] which gave plaintiff sixty percent of the assets....”
 

 ¶ 22. Furthermore, we note that the only interest that Chester could have had in the DeSoto County property was a homestead interest. However, the chancellor properly found that Chester voluntarily abandoned any interest he had in the property when he moved to an assisted-living facility in Memphis, Tennessee, shortly before his commitment to Whitfield. As far as the Tate County property is concerned, Chester never lived there. There is nothing to suggest that the deeds conveying the property to Burford and Herron are invalid for any reason. Ultimately, there is no genuine issue of material fact to suggest that Chester had a homestead interest in either of the properties at issue.
 

 ¶ 23. When an administrator or executor undertakes to close an estate:
 

 he shall take all proper steps to acquire possession of any part [of the estate] that may be withheld from him, and shall manage the same for the best interest of those concerned, consistently with the will, and according to law. He shall have the proper appraisements made, return true and complete inventories except as otherwise provided by law, shall collect all debts due the estate as speedily as may be, pay all debts that may be due from it which are properly probated and registered, so far as the means in his hands will allow, shall settle his accounts as often as the law may require, pay all the legacies and bequests as far as the estate may be sufficient, and shall well and truly execute the will if the law permit. He shall also have a right to the possession of the real estate so far as may be necessary to execute the will, and may have proper remedy therefor.
 

 Miss.Code Ann. § 91-7-47(1) (Supp.2008). Our supreme court has discussed at length the standard of care that is to be exercised by an executor or administrator:
 

 [T]he executor’s duties are “(1) to reduce to possession the personal assets of the testator; (2) to pay the testator’s debts; (3) to pay legacies; and (4) to distribute the surplus to the parties entitled thereto.” [(Quoting
 
 Yeates v. Box,
 
 198 Miss. 602, 22 So.2d 411 (1945))]. Powers granted an executor are coextensive with the will and therein grounded.
 
 Ricks v. Johnson,
 
 134 Miss. 676, 99 So. 142 (1924);
 
 Grant v. Spann,
 
 34 Miss. 294 (1857).
 

 The duly appointed executor shall carry out all of the provisions of the will that may be lawful. The will is the source and measure of the power of the executor.
 
 Ricks,
 
 99 So. at 146. And in de
 
 *1168
 
 termining the powers of executors, the basis for all construction of language within the will is to determine first the intention of the testator as gathered from the whole will.
 
 Yeates
 
 ..., 198 Miss, at 602, 22 So.2d at 411.
 

 One serving in the capacity of executor or administrator is an officer of the Court and holds a fiduciary relationship to all parties having an interest in the estate.
 
 A trust arises from the appointment of the executor or administrator.
 
 Schreiner v. Cincinnati Altenheim,
 
 61 Ohio App. 344, 22 N.E.2d 587 (1939); 33 C.J.S.,
 
 Executors and Administrators,
 
 § 3, p. 878 (1942).
 

 Thus in answering questions of the powers, duties, and liabilities of executors, this Court applies the above Mississippi statutory and case law, as well as the expressed intent of the testamentary instrument itself.
 

 In answering these questions[,] this Court must establish a standard of care chargeable to an executor in evaluating charges of maladministration.
 
 It appears proper that since a trust and fiduciary relationship is established by these connections, this Court holds that the same standard of care applicable to a general trustee applies to an executor or administrator.
 
 This standard is expressed as follows:
 

 Ordinary care, skill, and prudence are normally required of trustees in the performance of all their duties, unless the trust instrument provides otherwise. The rule is “that trustees are bound in the management of all the matters of the trust to act in good faith and employ such vigilance, sagacity, diligence and prudence as in general prudent [persons] of discretion and intelligence in like matters employ in their own affairs.... ”
 

 Bogert,
 
 Law of Trusts,
 
 § 93 (5th ed.1973).
 
 See also,
 
 Scott,
 
 Scott on Trusts,
 
 § 174 (3rd ed.1967).
 

 In re Estate of Carter,
 
 912 So.2d 138, 144-45(¶ 21) (Miss.2005) (quoting
 
 Harper v. Harper,
 
 491 So.2d 189, 193-94 (Miss.1986)). Thus, Johnson had a duty to discover all of the assets of his father’s estate before he agreed to close the estate.
 

 ¶ 24. The record is clear that Johnson was aware of the existence of additional real property. A series of letters was exchanged between his attorney and Her-ron’s attorney, wherein the property was discussed, as was the ownership of the properties. Furthermore, as the chancery court noted in its ruling, “all the contested deeds were public record, and [have] been ... for an extended period of time.” Despite his awareness of the properties, Johnson did nothing to include these properties as assets when his father’s estate was closed. In fact, he asserted to the chancery court in his petition to close his father’s estate that “all” assets of the estate were ready for distribution. He cannot now try to undo that averment to the court.
 

 ¶ 25. We find that summary judgment was properly granted on the ground of judicial estoppel. Therefore, we affirm the judgment of the chancery court.
 

 ¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.
 

 [1]
 

 . This piece of property was next door to Burford’s home. The record reflects that the property had been owned by the Burford family for a number of years.
 

 [2]
 

 . Burford and Herron admit that Chester suffered from colon cancer at one point, but that he recovered prior to his commitment to Whitfield.