# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01280-COA

**GUY CARPENTER, INDIVIDUALLY AND AS ADULT PARENT AND NEXT FRIEND OF COLE CARPENTER, A MINOR**　　　　　　　　　　　　**APPELLANT**

**v.**

**KENNETH MARVIN CONWAY**　　　　　　　　　　　　**APPELLEE**

DATE OF JUDGMENT:　　　　　　08/10/2018
TRIAL JUDGE:　　　　　　　　　HON. SUSAN RHEA SHELDON
COURT FROM WHICH APPEALED:　PERRY COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:　　　DANIEL MYERS WAIDE
ATTORNEY FOR APPELLEE:　　　　ANTHONY SAKALARIOS
NATURE OF THE CASE:　　　　　　CIVIL - REAL PROPERTY
DISPOSITION:　　　　　　　　　　AFFIRMED - 11/19/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

　　**EN BANC.**

　　**TINDELL, J., FOR THE COURT:**

¶1.　Individually and on behalf of his minor son, Guy Carpenter filed a complaint in the Perry County Chancery Court against his brother-in-law, Kenneth Conway. After finding that Guy's claims were barred by both judicial and collateral estoppel and that the complaint failed to state a claim upon which relief could be granted, the chancellor dismissed Guy's complaint with prejudice under Mississippi Rule of Civil Procedure 12(b)(6). On appeal, Guy argues that the chancellor erroneously found that judicial and collateral estoppel barred his claims. Finding no error, we affirm the chancellor's judgment.

## FACTS

¶2. On November 24, 2002, Guy married Terry Ruth Conway. The couple welcomed a son in 2006. Terry died intestate on April 22, 2011. Prior to her marriage, Terry had received by conveyance three parcels of land. On May 4, 2001, Terry's parents, J.M. and Addie Mae Conway, conveyed to Terry a 56.6-acre parcel (Parcel 1) with a life estate reserved for themselves. Three days later, on May 7, 2001, Terry's brother, Kenneth, deeded her another 40-acre parcel (Parcel 2) with a life estate again reserved for his and Terry's parents. Finally, shortly before Terry's marriage, her parents conveyed to her in fee simple a 7.1-acre parcel (Parcel 3) that adjoined the other two properties. After their marriage, Terry and Guy mortgaged Parcel 3 and used the loan to build their marital home on the property. Each year during the marriage, Terry filed a homestead declaration only on Parcel 3.

¶3. Consistent with their life-estate interests in Parcels 1 and 2, J.M. and Addie Mae used the property for cattle grazing and leased it to a local farmer. In his affidavit, J.M. stated that he paid the annual real estate taxes on Parcels 1 and 2. He further stated that neither Terry nor Guy ever used the parcels.

¶4. At some point during her marriage, Terry received a terminal cancer diagnosis, and her relationship with Guy began to deteriorate. According to multiple affidavits contained in the record, Terry sought an attorney's advice on filing for divorce. Prior to her death, Terry decided to convey back to her parents Parcels 1 and 2. She executed the deeds for the conveyances on March 3, 2011. Following Terry's death on April 22, 2011, her parents recorded the deeds on May 9, 2011. In November 2011, the chancellor appointed Guy as the

2

administrator of Terry's estate. As administrator, Guy never identified Parcels 1 and 2 as part of the real property that Terry owned at the time of her death, and he never pursued a cause of action on her estate's behalf related to the two parcels. Guy instead identified only Parcel 3, the 7.1-acre parcel upon which the marital home was situated, as the only real property that Terry held an ownership interest in when she died.

¶5. On June 29, 2016, around four years after the chancellor entered the final order to close Terry's estate, Guy filed a complaint individually and on his minor son's behalf against Terry's brother, Kenneth, and sought to have the chancellor declare Terry's conveyances of Parcels 1 and 2 void. Although Terry had deeded the parcels to her parents, the parties agree that Kenneth then became the owner of the properties. Guy asserted that Terry had conveyed Parcels 1 and 2 without his knowledge or agreement and that the conveyances were void as a matter of law for the following reasons: (1) the deeds also required his signature because the parcels were part of the marital homestead; and (2) at the time Terry executed the deeds just a few weeks before her death, she lacked the necessary mental capacity to make the conveyances. Guy therefore asked that the chancellor void Terry's March 3, 2011 conveyances to her parents and recognize Guy and his son as tenants in common and rightful owners of all the real property that Terry owned when she died.

¶6. Guy later moved for a judgment on the pleadings under Rule 12(b)(6). Kenneth responded and argued that judicial estoppel and res judicata barred Guy's claims. In her August 10, 2018 order, the chancellor found that Guy's claims were barred by both judicial

3

and collateral estoppel.[1]  In addition, the chancellor determined that Guy's pleadings failed to state a claim upon which relief could be granted.  As a result, the chancellor dismissed Guy's complaint with prejudice under Rule 12(b)(6).  Aggrieved, Guy appeals.

## DISCUSSION

¶7.     In appealing the dismissal of his complaint, Guy asserts the chancellor erroneously found that judicial estoppel barred his claims.  Although we review de novo a trial court's grant or denial of a motion to dismiss, *Trigg v. Farese*, 266 So. 3d 611, 617 (¶9) (Miss. 2018), we review the application of judicial estoppel for abuse of discretion.  *Adams v. Graceland Care Ctr. of Oxford LLC*, 208 So. 3d 575, 580 (¶13) (Miss. 2017).  Thus, we must first determine whether the chancellor abused her discretion by finding that judicial estoppel barred Guy's claims, and then we must review de novo whether the chancellor properly dismissed Guy's complaint under Rule 12(b)(6).  *See id.* at 579-80 (¶12); *Rogers v. Gulfside Casino P'ship*, 206 So. 3d 1274, 1279 (¶9) (Miss. Ct. App. 2016).

¶8.     As the Mississippi Supreme Court has explained:

> Judicial estoppel precludes a party from asserting a position, benefitting from that position, and then, when it becomes more convenient or profitable, retreating from that position later in the litigation.  Judicial estoppel has three elements: A party will be judicially estopped from taking a subsequent position if (1) the position is inconsistent with one previously taken during litigation, (2) a court accepted the previous position, and (3) the party did not inadvertently take the inconsistent positions.

---

[1] Although Kenneth argued that res judicata barred Guy's claims, the chancellor relied on judicial estoppel and collateral estoppel in dismissing Guy's complaint.

*Hinton v. Pekin Ins. Co.*, 268 So. 3d 543, 558-59 (¶62) (Miss. 2019) (citation and internal quotation marks omitted).

¶9.     Regarding the first prong of judicial estoppel, Guy asserts that he has never been involved in a prior adverse proceeding with Kenneth. In *Clark v. Neese*, 131 So. 3d 556, 561-62 (¶21) (Miss. 2013), the supreme court "took the opportunity to clarify" its elimination of "the adverse-party requirement and overruled [its] prior judicial-estoppel opinions insofar as they included such a requirement." As the *Clark* court explained:

> The purpose of judicial estoppel is to prevent parties from knowingly taking a position in one court that is contrary to a position that party has asserted in, and that has been accepted by, another court. This purpose is served regardless of whether the inconsistent positions were taken in opposition to the same party.

*Id.* at 562 (¶21).

¶10.    Even before the supreme court's holding in *Clark* regarding the elimination of the adverse-party requirement, this Court determined in *Johnson v. Herron*, 33 So. 3d 1160 (Miss. Ct. App. 2009), that an estate proceeding could meet all the requirements necessary for judicial estoppel. In *Johnson* the decedent's son by his first marriage and his niece by his second marriage acted as co-administrators of his estate. *Id.* at 1162 (¶7). The co-administrators and the decedent's nephew by his second marriage entered into a settlement agreement to close the decedent's estate and distribute his assets. *Id.* Almost three years after closing the estate, the son sought to contest the asset distribution. *Id.* at 1164 (¶10). As part of his requested relief, the son asked that the chancellor void deeds to certain pieces of

5

real property and make him the sole owner of the properties. *Id.*

¶11.  The chancellor in *Johnson* granted the niece and nephew's summary-judgment motion after finding that judicial estoppel precluded the son from serving as co-administrator of his father's estate, joining the petition to close the estate, and then filing a subsequent lawsuit to contest the asset distribution to which he had previously agreed at the estate's closure. *Id.* at 1164-65 (¶13).  On appeal, the son argued that judicial estoppel failed to apply because it required the parties to be involved in a prior adverse proceeding, and he contended that he had never been involved in such a proceeding with the niece and nephew. *Id.* at 1167 (¶21). In affirming the chancellor's ruling, however, this Court agreed with the chancellor's conclusion that, although the son and niece were both co-administrators of the decedent's estate, the parties were still clearly in an adverse position as to the estate's assets and their respective interests in those assets. *Id.*

¶12.  Based on the holdings in both *Clark* and *Johnson*, we find that all the requirements for judicial estoppel have been met in the present case.  We first note that, like the son in *Johnson*, Guy asserts on appeal that neither he nor his son has ever been involved in a prior adverse proceeding with Kenneth.  As discussed, however, this is no longer a requirement for finding judicial estoppel. *Clark*, 131 So. 3d at 561-62 (¶21).

¶13.  As administrator of Terry's estate, Guy had an affirmative duty to "take all proper steps to acquire possession of any part of . . . [the estate] that may be withheld from him

6

. . . ." Miss. Code Ann. § 91-7-47(1) (Rev. 2018).[2] Further, he had a duty to "ascertain whether the decedent was the sole owner, joint owner[,] or tenant in common" of the real estate. Robert E. Williford & Samuel H. Williford, Mississippi Probate and Administration of Estates § 8:3 (3d ed. 2019). Such a determination "is essential if the existence and nature of the ownership is to be correctly reported on the estate tax return." *Id.*; *see also* Miss. Code Ann. § 91-7-157 (Rev. 2018) ("An executor or administrator shall pay all taxes that may be due on real and personal property belonging to the estate."). In fulfilling his role as administrator, Guy never raised the claims he now seeks to assert—that Parcels 1 and 2 belonged to Terry's estate and that he and his son possess an ownership interest in those parcels as tenants in common. Instead, Guy maintained during the probate proceedings that Parcel 3 alone comprised his and Terry's homestead. By maintaining this position, Guy had no adverse claims to contend with during the probate of Terry's estate. Thus, the estate was closed in a more timely fashion, and Guy's ownership right to Parcel 3 was completely and definitively established. After benefitting from the position he maintained during the probate proceedings, Guy now adopts a contrary argument in the current litigation and asserts for the

---

[2] As the dissent correctly points out, by operation of law, Parcel 3 descended to Guy and the couple's minor son upon Terry's death. *See* Miss. Code Ann. § 91-1-7 (Rev. 2018). Thus, Guy was not required to open an estate except to ensure that Terry's other assets would in fact transfer to her next of kin, which were Guy and the couple's minor son. *See* Miss. Code Ann. § 91-1-11 (Rev. 2018). And since Terry had already conveyed Parcels 1 and 2 to her parents prior to her death, Guy had a duty on behalf of Terry's heirs to raise any claims to those parcels during the probate proceedings. *See* Miss. Code Ann. §§ 91-7-47(1) & -93 (Rev. 2018).

7

first time that Terry actually owned all three parcels of land when she died and that he and his son are tenants in common. Because the record clearly reflects that Guy has taken a position in the current litigation that is contrary to the one he took in the prior probate proceedings, we find the first requirement of judicial estoppel has been met.

¶14. The second prong of judicial estoppel requires the court to have accepted the party's prior position. *Hinton*, 268 So. 3d at 558-59 (¶62). By entering the order to close Terry's estate, the chancellor effectively accepted Guy's representation that Terry owned only Parcel 3 at the time she died. We therefore find this prong has also been met.

¶15. Relevant to the third requirement for judicial estoppel, Guy contends that his current and previous positions were not intentionally inconsistent but that his previous position was, at most, simply "incomplete." When discussed within the context of a bankruptcy proceeding, this Court has explained:

> A debtor's non-disclosure is inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment. Moreover, it is the debtor's burden to prove that her non-disclosure was inadvertent. The question is not whether the debtor subjectively knew at the time of her bankruptcy that she had a legal duty to disclose the claim in her bankruptcy proceeding. Rather, a debtor is deemed to have had knowledge of her claim so long as she was aware of the facts giving rise to it.

*Rogers*, 206 So. 3d at 1280 (¶11) (citations and internal quotation marks omitted).

¶16. Here, Guy makes no assertion that he was somehow unaware of Parcels 1 and 2 at the time he probated Terry's estate. In fact, Guy admits his prior knowledge of Parcels 1 and 2 and states that he withheld his current claims regarding these parcels during the probate

proceedings based on his attorney's advice. As administrator of Terry's estate, however, Guy possessed a duty to discover and inventory all her assets before he sought or agreed to the estate's closing. Miss. Code Ann. § 91-7-93 (Rev. 2018). He also had a duty to determine the nature of Terry's ownership interest in her real property. *See* Williford & Williford, Mississippi Probate and Administration of Estates § 8:3. Guy represented to the chancellor that Parcel 3 was the only real property Terry owned at the time of her death, the chancellor relied on his representation, and Guy benefitted when the chancellor closed the estate and he and his son received ownership of the parcel. We therefore find no merit to Guy's claim now that his inconsistent positions were unintentional.

¶17. Based on the record and applicable caselaw, we find no abuse of discretion in the chancellor's determination that all three requirements for judicial estoppel were met. We therefore find no error in the chancellor's dismissal of Guy's complaint under Rule 12(b)(6). Because we affirm the chancellor's judgment on this ground, we decline to address Guy's remaining assignment of error on appeal.

## CONCLUSION

¶18. Because we find that the chancellor properly determined judicial estoppel barred Guy's claims, we affirm the judgment dismissing Guy's complaint with prejudice under Rule 12(b)(6).

¶19. **AFFIRMED.**

**CARLTON, P.J., GREENLEE, McDONALD AND LAWRENCE, JJ., CONCUR. C. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE**

9

**WRITTEN OPINION. J. WILSON, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. BARNES, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McCARTY, JJ.; J. WILSON, P.J., JOINS IN PART.**

**BARNES, C.J., DISSENTING:**

¶20.    I dissent from the majority's conclusion that Guy Carpenter is judicially estopped from contesting the conveyances at issue. First, any representations Guy made as administrator of Terry's estate are not binding on his and Terry's minor son, Cole. Second, because the real property at issue descended to Terry's heirs by operation of law, Guy did not benefit from his prior position in the probate proceedings. Accordingly, I would reverse the court's judgment dismissing the complaint and remand for further proceedings.

¶21.    "The purpose of judicial estoppel is to prevent parties from knowingly taking a position in one court that is contrary to a position *that party* has asserted in, and that has been accepted by, another court." *Clark v. Neese*, 131 So. 3d 556, 562 (¶21) (Miss. 2013) (emphasis added). Guy instituted the probate proceeding as administrator of Terry's estate, not as next friend of his minor son, Cole. While I find no Mississippi cases addressing this specific issue, other jurisdictions have determined that actions filed in an individual capacity and actions filed on behalf of a minor are legally separate and distinct, even if founded on the same action. In *Lambdin v. Travelers Ins. Co.*, 150 So. 2d 636 (La. Ct. App. 1963), a mother filed suit after her minor child sustained injuries from a soda bottle that shattered. The mother sued individually to recover for medical expenses, as well as in her capacity as tutrix of her child's estate to recover for the child's personal injuries. *Id*. at 637. Judgment

10

was entered in favor of the mother on her individual claim, but the defendant prevailed on the mother's claim on behalf of the child. *Id.* In considering whether the judgment awarded to the mother was "a conclusive determination of fault binding upon the defendant," the Louisiana Court of Appeals held that the claim asserted by the mother individually, "although founded on the same cause of action, is in the eyes of the law separate and distinct from the claim asserted by the mother in her capacity as tutrix of the minor child." *Id*. at 638.

> For a judgment on one judicial demand to be a conclusive determination of the same question involved in the determination of another judicial demand, not only must the demands be the same and founded upon the same cause of action—the demands must also be asserted between the same parties, [e]ach acting in the same capacity.

*Id*.

¶22. In *Chance v. Gibson*, 99 S.W.3d 108, 109 (Tenn. Ct. App. 2002), an adult daughter and her mother sought to establish paternity and recover child support from Carl Gibson, who they alleged was the adult daughter's birth father. The trial court dismissed the claim on the basis of judicial estoppel because the mother, in a prior divorce proceeding, sought and was awarded child support from her ex-husband, James Chance. *Id*. at 110. The Tennessee Court of Appeals held that the daughter was not precluded by judicial estoppel from pursuing her claims because she was not a party to the prior child-support action and "was a minor at the time the pleadings were filed." *Id*. at 111.

¶23. Because Cole was a minor and not a party to the probate proceedings, any representations made by Guy in those proceedings cannot be imputed to Cole. Therefore, I

11

find that Guy, *as parent and next friend of Cole*, is not judicially estopped from pursuing the current action against the Conways.

¶24. Furthermore, Guy did not derive any benefit from his prior position in the probate proceedings. The Mississippi Supreme Court has held that "[w]hen the party asserting the prior inconsistent position has not benefitted by the assertion, the doctrine [of judicial estoppel] should not be applied." *Gibson v. Williams, Williams & Montgomery P.A.*, 186 So. 3d 836, 846 (¶25) (Miss. 2016) (emphasis omitted); *see also Donaldson v. Ovella*, 228 So. 3d 820, 829 (¶24) (Miss. Ct. App. 2017) (finding that because the appellants had "not benefitted from their prior position, . . . their claims are not barred by judicial estoppel"). The majority addresses the "benefit" requirement for judicial estoppel by stating that Guy benefitted "when the chancellor closed the estate and he and his son received ownership of [Parcel 3]."

¶25. Terry died intestate; so any interest she had in real property descended to Guy, her husband, as an heir by operation of law. *See* Miss. Code Ann. § 91-1-7 (Rev. 2018). This Court has recognized:

> [R]eal property descends directly to, and title vests in, the heirs at law to enjoy until the contingency arises when it may be needed to pay debts. Administration then covers only the decedent's personalty and the realty is in no way involved unless and until the personalty becomes insufficient to pay the debts and expenses.

*Prout v. Williams*, 55 So. 3d 195, 204 (¶28) (Miss. Ct. App. 2011) (quoting Robert Weems, *Miss. Practice Series: Wills & Admin. of Estates in Miss.* § 2:13 (3d ed. 2003)); *see also*

12

*Barnes v. Rogers*, 206 Miss. 887, 892, 41 So. 2d 58, 60 (1949) (holding that administration of the estate "covers only the personal property belonging to the estate[,] and the real property is no[t] . . . involved in the administration unless and until the personal property becomes insufficient to pay the debts and it becomes necessary to resort to the land for the payment of the debts of the estate"); *Estate of Mace v. Gardner*, 66 So. 3d 1265, 1268 n.1 (Miss. Ct. App. 2011) (noting that "by operation of law, in the absence of a will, title of real property vests immediately in the heirs at law upon the owner's death") (citing *In re Will of Wilcher v. Wilcher*, 994 So. 2d 170, 176 (¶12) (Miss. 2008)).

¶26.　　The majority does cite *Johnson v. Herron*, 33 So. 3d 1160, 1166-68 (¶¶19-25) (Miss. Ct. App. 2009), which affirmed a chancery court's finding of judicial estoppel because Johnson, the decedent's son and co-administrator of his father's estate, failed to include real property as an asset when his father's estate was closed.  In *Johnson*, this Court cited portions of Mississippi Code Annotated section 91-7-47(1) (Supp. 2008):

When an administrator or executor undertakes to close an estate:

> he shall take all proper steps to acquire possession of any part [of the estate] that may be withheld from him, and shall manage the same for the best interest of those concerned, consistently with the will, and according to law. He shall have the proper appraisements made, return true and complete inventories except as otherwise provided by law, shall collect all debts due the estate as speedily as may be, pay all debts that may be due from it which are properly probated and registered, so far as the means in his hands will allow, shall settle his accounts as often as the law may require, pay all the legacies and bequests as far as the estate may be sufficient, and shall well and truly execute the will if the law permit. He shall also have a right to the

> possession of the real estate so far as may be necessary to
> execute the will, and may have proper remedy therefor.

*Id*. at 1167 (¶23) (brackets in original). We found that "Johnson had a duty to discover all of the assets of his father's estate before he agreed to close the estate." *Id*. The majority relies on *Johnson* and Mississippi Code Annotated section 91-7-47(1) (Rev. 2018) to conclude that Guy, as administrator of Terry's estate, "had an affirmative duty to 'take all proper steps to acquire possession *of any part of* . . . [*the estate*] that may be withheld from him . . . .'" (Emphasis added) (ellipses and brackets in original).

¶27.    However, looking at the omitted and edited portions of section 91-7-47(1) as cited in *Johnson* and the majority's opinion, two crucial distinctions are revealed. First, the statute addresses the duty of the executor or administrator "with the will annexed." Terry died intestate; therefore, this statute does not apply. Second, the statute provides that the executor or administrator *cum testamento annexo*[3] "shall have the right to the possession *of all the personal estate of the deceased*, unless otherwise directed in the will; and he shall take all proper steps to acquire *possession of any part thereof* that may be withheld from him." Miss. Code Ann. § 91-7-47(1) (emphasis added). Any right to possession of the real estate is only "so far as may be necessary to execute the will, and may have proper remedy therefor."[4] *Id*.

---

[3] *Cum testamento annexo* is a Latin term meaning "with the will annexed." Black's Law Dictionary 52 (10th ed. 2014).

[4] The full text of the statute reads:

> *Every executor or administrator with the will annexed, who has qualified,*
> *shall have the right to the possession of all the personal estate of the*

14

¶28. It is unknown whether the citation to section 91-7-47(1) was critical to the holding in *Johnson*, as the Court concluded that the co-administrator had benefitted from a negotiated estate settlement agreement,[5] or if either party in that case raised the fact that real property descends by operation of law. But here, appellant's counsel did raise the issue during the motions hearing, arguing:

> There was no litigation of who owned certain property in the estate proceeding. The estate proceeding is commenced to cut off the claims of creditors and *if* there's property to be devised or property to be dealt with, sometimes it's listed in the inventory. Sometimes the inventories [are] improper or incorrect, but it doesn't matter. *As a matter of law, when someone dies, the land descends to where it goes if they die intestate.*

(Emphasis added). This is a correct and pivotal statement of the law, and it cannot be ignored. Guy had no affirmative duty to identify the real property of the decedent unless the

---

> *deceased, unless otherwise directed in the will; and* he shall take all proper steps to acquire possession of any part thereof that may be withheld from him, and shall manage the same for the best interest of those concerned, consistently with the will, and according to law. He shall have the proper appraisements made, return true and complete inventories except as otherwise provided by law, shall collect all debts due the estate as speedily as may be, pay all debts that may be due from it which are properly probated and registered, so far as the means in his hands will allow, shall settle his accounts as often as the law may require, pay all the legacies and bequests as far as the estate may be sufficient, and shall well and truly execute the will if the law permit. He shall also have a right to the possession of the real estate so far as may be necessary to execute the will, and may have proper remedy therefor.

Miss. Code Ann. § 91-7-47(1) (italicized language not quoted by *Johnson* or majority opinion).

[5] Under the terms of the settlement agreement, Johnson received sixty-percent of the estate. A will was later discovered that left only fifty-percent of the estate to Johnson.

real property was required to pay the estate's debts after the personalty was exhausted.

¶29. The majority contends that as administrator, Guy had the duty to ascertain the ownership of the real estate so that the ownership could properly be reported on the estate's tax return. *Supra* at (¶13). However, there is no indication in the record that the estate was valued above $5,000,000 so as to require an estate tax return. *Compare* Miss. Code Ann. § 27-9-11 (Rev. 2017) (tying estate tax deduction to federal tax exclusion amount as codified in Section 2010 of Title 26 of the United States Code); *and* Miss. Code Ann. § 27-9-21 (Rev. 2017) (requiring executor to give notice to commissioner within sixty days where gross estate value exceeds exemption provided in section 27-9-11); *and* Miss. Code Ann. § 27-9-23 (Rev. 2017) (requiring executor to file estate tax return where gross estate exceeds amount of specified exemption in section 27-9-11) *with* 26 U.S.C. § 2010(c)(3)(A) (2018) (establishing the basic exclusion amount for a person dying in 2011 at $5,000,000). The fact that the estate (dealing only with the personalty) was "closed in a more timely fashion, and Guy's ownership right to Parcel 3 was completely and definitively established" is hardly a benefit sufficient to apply judicial estoppel, considering there is no indication that there was ever any question as to his right to Parcel 3. The majority is, with respect, trying too hard to make the doctrine of judicial estoppel apply where it clearly does not.

¶30. I would reverse the chancery court's judgment of dismissal and remand for further proceedings.

**WESTBROOKS AND McCARTY, JJ., JOIN THIS OPINION. J. WILSON, P.J., JOINS THIS OPINION IN PART.**